Mary T. VANDER PERREN, Plaintiff-Appellant-Petitioner,

v.

Floyd M. VANDER PERREN, Defendant-Respondent.

Supreme Court

*No. 80–1189. Argued December 1, 1981.—Decided January 5, 1982.*

(Also reported in 313 N.W.2d 813.)

For the plaintiff-petitioner there were briefs by *Avram D. Berk* and *Berk, Berk & Hoida, S.C.,* of Green Bay, and oral argument by *Avram D. Berk.*

For the defendant-respondent there was a brief and ·oral argument by *Stephen J. Holden* of Green Bay.

WILLIAM G. CALLOW, J. This is a review of an unpublished March 24, 1981, decision of the court of appeals, affirming in part and vacating and remanding in part a June 6, 1980, order of Brown county circuit court Judge John C. Jaekels, denying plaintiff's motion to increase maintenance; continuing maintenance in a reduced amount; and providing for the termination of maintenance on March 31, 1981. The primary issue pursued by the parties is the propriety of the termination ·of maintenance.

Mary T. Vander Perren (Mary) and Floyd M. Vander Perren (Floyd) were divorced on November 15, 1972, by judgment of Brown county court Judge Richard J. Farrell. By stipulation of the parties, Mary was awarded custody of the couple's two minor children and was

awarded possession of their home until the youngest child became eighteen. At that time the house would be sold and the parties would divide the proceeds of the sale. By stipulation and pursuant to that judgment, Floyd was ordered to pay maintenance in the amount of $175 per month for an unlimited period of time and child support for the couple's two minor sons in the amount of $200 per month until each child became self-supporting or attained the age of eighteen. The parties' stipulation regarding the division of their estate was incorporated in the judgment.

Prior to their divorce, Mary and Floyd had been married for about twenty-four and one-half years. During the two-year period between Mary's high school graduation and the marriage, she had limited employment experience. After the marriage, Mary remained at home caring for the children because Floyd did not want her to work outside the home. Floyd has worked as a co-ordinator for Milprint, Inc., for approximately twenty-six years.

Support payments were terminated by stipulation and order filed August 25, 1977, amending the divorce judgment when custody of the parties' remaining minor son was transferred to Floyd. On July 18, 1977, Mary filed a motion to have her maintenance increased, and on October 21, 1977, Floyd filed a motion to terminate maintenance. In response to those motions, on November 10, 1977, Judge N. Patrick Crooks amended the divorce decree as follows: Mary's maintenance was immediately increased to $300 per month with the proviso that it terminate entirely on February 1, 1980, unless Mary petitioned the court for a continuation of maintenance prior to that time.

On January 24, 1980, Mary filed a petition requesting the trial court to increase and extend maintenance, alleging that her limited physical and vocational skills

left her without sufficient income to sustain and support herself without receiving maintenance from Floyd. Floyd brought a motion to dismiss Mary's motion, alleging that the court lacked subject matter jurisdiction over maintenance because Judge Crooks' November 10, 1977, order was for limited alimony, thereby depriving the court of jurisdiction to continue alimony after February, 1980. Apparently relying on his position that the court lacked subject matter jurisdiction, Floyd did not move to reduce or terminate maintenance. On January 29, 1980, Judge Jaekels granted Mary's motion to retain jurisdiction over maintenance beyond February 1, 1980. Subsequent evidentiary hearings as to the parties' income and assets were held.

By order filed June 6, 1980, Judge Jaekels denied Mary's petition to increase maintenance and reduced maintenance to $150 per month until March 31, 1981, at which time all alimony terminated,[1] despite the fact that

[1] Because Judge Jaekels' March 31, 1980, decision and corresponding June 6, 1980, order are the subject of this appeal, we set the decision out in full:

"This dovorce [sic] judgment ordered general alimony and not alimony for a limited period only. Under Section[s] 247.26 & 247.32, Chapter 220, Laws of 1977, a Court could order either. Section 247.32 provided that alimony for a limited time only could not thereafter be revised or altered. Since the original judgment was for a general alimony, Judge Crooks had the legal authority to alter or revise, which he did on November 10, 1977. He altered the amount of alimony from $175 per month to $300 per month. While Judge Crooks ordered that this payment continue to February 1, 1980, it is clear from the transcript that Judge Crooks did not intend this amended judgment to be for a *limited period only*. His obvious intent was to provide adequate alimony for a period of time that he thought sufficient for plaintiff to obtain the job training or schooling that should enable her to become self-supporting, and he provided an escape mechanism in the event she failed. Judge Crooks did not order alimony for a limited period only and his order is not opposed to *Johnson v. Johnson*, 78 Wis. 2nd 137. (Emphasis in original.)

no motion to reduce or terminate maintenance was before him.

The principle issue on this review, as in the court of appeals, is whether the trial court abused its discretion in reducing and terminating Mary's maintenance. We conclude that in ordering the reduction and termination of Mary's maintenance, the trial court did abuse its discretion. While we affirm the trial court's determination that it had subject matter jurisdiction, we vacate the trial court's order reducing and terminating maintenance, and we remand the case to the trial court for further consideration in accordance with the standards established in sec. 767.26, Stats.[2]

"The Court did not lose jurisdiction on February 1, 1980. Defendant's motion to dismiss is denied.

"With reference to continuing alimony. She is now 51 years of age. The children all reached their majority prior to November 10, 1977. She has a high school education, and some clerking experience. While she complains of disability, this condition merely precludes her from doing heavy work. It does not prevent her from doing clerking as clerical type work. She has steady employment at the White Store. While her net may be $371 per month, she received a refund of some $1,100 for 1979. Her true net wages are then about $462 per month. She also has interest income of $198 per month for a total monthly income of about $660 per month. Her budget is $803, but the medical, laundry, entertainment and incidentals are high and inaccurate.

"The children are grown. She has steady employment, and with her present experience could most likely find similar employment at higher wages. The Court will order maintenance at the rate of $150 per month commencing April 1, 1980 for a period of one year so that all alimony obligation will terminate on March 31, 1981. Plaintiff's motion for increased alimony is denied."

[2] Sec. 767.26, Stats., provides:

"767.26 **Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

At the time this appeal arose, Mary was fifty-one years of age. She was employed, through the favor of a friend, as a sales clerk, earning a minimum wage of $3.10 per hour resulting in a net income of $371 per month. Mary also had interest income of $198 per month from investments of her share of the proceeds from the sale of the family home. Testimony revealed that, although Mary was to receive a $242 tax refund from the state in 1979, she would be required to pay a federal income tax of $1,116 on her share of the proceeds from the sale of the parties' home.

Mary testified that physical disabilities of her arms and shoulders prohibited her from engaging in any type of employment which requires elevating her arms above

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

her waist, including waitressing, typing, factory work, and housecleaning. Testimony in the record reveals that Mary does bowl and play golf and that, if she takes pain medication, her disabilities do not substantially interfere with these activities.

Expert testimony presented at trial revealed that Mary's chances of finding a higher paying job were "[l]ess than for the average applicant." That testimony revealed that due to Mary's age, coupled with her physical disabilities, less than 50 percent of the jobs in the labor market would be available to her and that it was unlikely she could successfully compete in the employment market for more than 10 percent of those jobs. Such jobs would typically pay minimum wages to 75 cents per hour above minimum wage.

Mary submitted a budget of $803 to the court with monthly expenses itemized to include: $265 for rent, $25 laundry and cleaning, $25 medical and drug expenses, $10 dental expenses, $60 entertainment, and $60 incidentals. Judge Jaekels summarily concluded that these figures were "high and inaccurate."

Floyd, age fifty-three, testified that he had gross earnings of between $16,000 and $19,500 for the years 1977–1979. Floyd submitted a budget to the court claiming monthly expenses in the amount of $1,025.30, $404.-20 of which was for food because Floyd stated he cannot cook and must eat meals out. Floyd further estimated monthly expenses, in part, of $37.32 dental, $65 entertainment, $236.50 automobile, $10 laundry, $5 incidentals. Floyd lives in a home which is completely paid for, and he has no monthly rental expenses.

We agree with the trial court that Judge Crooks' order of November 10, 1977, provided for general as opposed to limited alimony. Judge Crooks' words—"[u]nless plaintiff petitions the Court . . . for a continuation

of alimony, the Court will adjudge that plaintiff has waived alimony effective February 1, 1980"—do not provide the certainty characteristic of limited maintenance. As we recently noted: "The certainty [of a limited alimony award] allows the parties to make plans without fears that the award will change." *Johnson v. Johnson,* 78 Wis. 2d 137, 146, 254 N.W.2d 198 (1977). Judge Crooks' order specifically provided that, if Mary did not waive maintenance, "the Court's continuing jurisdiction of alimony will remain in effect." Clearly, these words do not "limit" or evince a certainty of termination of the maintenance award, and they cannot be construed to provide limited maintenance. We conclude, therefore, that the court had subject matter jurisdiction to issue the June 6, 1980, order.

Mary argues that the trial court abused its discretion in its June 6, 1980, order reducing and terminating her maintenance because the only matters before the court were plaintiff's motion for an increase in maintenance and defendant's motion to dismiss, alleging lack of subject matter jurisdiction. We conclude that sec. 767.32, Stats.,[3] permits a court upon motion to increase maintenance, to reduce or to terminate maintenance as the circumstances of the parties may require. Procedurally, the court's actions in ordering the reduction and termination of maintenance when the only motion before it was to increase maintenance was not an abuse of discretion.

It is well-settled law in this state and elsewhere that the trial court maintains broad discretion in determin-

---

[3] Sec. 767.32, Stats., provides in pertinent part:

"[T]he court may, from time to time, on the petition of either of the parties . . . revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof . . . and *may make any judgment respecting any of the matters which such court might have made in the original action."* (Emphasis added.)

ing maintenance awards. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) ; *Dean v. Dean,* 87 Wis. 2d 854, 877, 275 N.W.2d 902 (1979) ; *Johnson v. Johnson,* 78 Wis. 2d at 143; *Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 89–90, 248 N.W.2d 417 (1977) ; *Greco v. Greco,* 73 Wis. 2d 220, 229, 243 N.W.2d 465 (1976). We are mindful, however, "that the exercise of discretion is not the equivalent of unfettered decision-making." *Hartung v. Hartung, supra* at 66.

An abuse of discretion occurs when the trial court makes an error in computation. *Dean v. Dean, supra* at 877; *Bussewitz v. Bussewitz, supra* at 83–84; *Johnson v. Johnson, supra* at 143–44. In the instant action, Judge Jaekels erroneously calculated Mary's financial status by concluding that she received a tax refund of $1,100 for 1979.[4] Mary's 1979 tax return reveals she paid $1,216 in estimated and personal income. We agreed with the court of appeals' conclusion: "In light of Mary's monthly income, the error in calculating Mary's tax refund appears to have been a substantial factor in the court's determination of the amount of alimony to be paid." Accordingly, the court of appeals properly vacated that portion of Judge Jaekels' order reducing Mary's maintenance and remanded the cause for a redetermination of the amount of maintenance in light of the actual tax payment. We note that the parties do not dispute this action.

The real dispute before this court, as defined by the parties' oral arguments, is whether the trial court abused its discretion in ordering Mary's maintenance to terminate on March 31, 1981. The court of appeals determined that the tax error was not a substantial factor in the court's determination of an appropriate date for the termination of the maintenance payments. It concluded that the trial court's "finding that Mary failed to

---

[4] *See* n. 1 *supra.*

properly use the alimony period to enable herself to become self-supporting and its findings as to the validity of Mary's statement of monthly expenses are not contrary to the great weight and clear preponderance of the evidence." *See: Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 42, 260 N.W.2d 658 (1978). Consequently, the court of appeals affirmed that portion of the trial court's order terminating maintenance. In this respect we held the court of appeals erred.

Our review of the record in this case leaves us with the conclusion that an abuse of discretion occurred when Judge Jaekels limited the period of maintenance without adequate findings of fact. *See: Rust v. Rust,* 47 Wis. 2d 565, 572–73, 177 N.W.2d 888 (1970). Judge Jaekels failed to articulate and use all of the appropriate legislative standards or guidelines established in sec. 767.26, Stats., applicable to this case. In his decision Judge Jaekels concludes, without articulating a factual basis, that "the medical, laundry, entertainment and incidentals are high and inaccurate." Furthermore, he concludes without any evidentiary support and in the face of contrary evidence that Mary "could most likely find similar employment at higher wages."

Sec. 767.26, Stats., requires that a court consider various factors[5] in ordering maintenance payments. While the court considered some of the statutory standards, the record does not indicate that the trial court gave any consideration to Mary's needs in order that she be permitted to live *at a standard of living reasonably comparable to that enjoyed during the marriage.* This is an important consideration requiring the court's attention.

---

[5] *See* n. 2 *supra.* See also *Lemm v. Lemm,* 72 Wis. 2d 457, 459, 241 N.W.2d 593 (1976); *Markham v. Markham,* 65 Wis.2d 735, 752, 223 N.W.2d 616 (1974) ("[The court's] decision should be

We find no evidence in the record to support the trial judge's speculation that Mary could find similar employment at higher wages. We note that "[i]t is not enough that the relevant factors upon which discretion could have been based may be found obscurely in the record. If the exercise of discretion is to be upheld, it must be demonstrated *on the record* that those factors were considered in making the discretionary determination." *Hartung v. Hartung*, 102 Wis. 2d at 67 (emphasis added). Similarly, we find no supporting data for the trial judge's conclusion that certain figures in Mary's budget were high and inaccurate. Judge Jaekels determined that maintenance would terminate on March 31, 1981, without articulating any reason for concluding that to be an appropriate date for the termination of financial assistance.

Floyd argues that Mary has not maximized her potential to become self-supporting and that, despite being told to obtain training and employment, she did nothing for a year and one-half in response to that admonition. We believe that a party's lack of initiative or effort to become self-supporting is a relevant factor for a court to consider in awarding or terminating maintenance. *See:* sec. 767.26 (10), Stats. We do not, however, be-

based on all the facts and circumstances of the particular case. . . . [including] the needs of the wife and the ability of the husband to pay."). As we view the record, Floyd appears financially able to provide for a portion of Mary's maintenance, and while this fact should not be controlling, the court may properly consider it. *Lemm v. Lemm, supra* at 460.

We note that, although the trial court found Mary's budget "high," it made no comment on Floyd's spending over $400 per month (as compared with Mary's food budget of $135 per month) eating meals out because he cannot cook. We might suggest that it is not too late for Floyd to learn to cook if Mary, after twenty-six years out of the labor force, is required to obtain job training or schooling to enable her to become self-sufficient.

lieve that such considerations may be raised to a determinative status.

The payment of maintenance is not to be viewed as a permanent annuity. Rather, such payment is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary.

The factors established in sec. 767.26, Stats., were not sufficiently addressed by the trial court. Therefore, the order terminating maintenance on March 31, 1981, was arbitrary on its face. We find no facts in the record to support a conclusion that Mary would be appropriately self-supporting on that or any other date. Consequently, we find that the trial court's order reducing and terminating maintenance constituted an abuse of discretion. We affirm that part of the court of appeals' decision remanding the case for reconsideration of the amount of maintenance in light of the tax computation error; we reverse that part of the court of appeals' decision affirming the trial court's termination of maintenance; and we remand to the trial court with directions to consider the sec. 767.26, Stats., criteria in determining the proper amount and duration of the maintenance award.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and cause remanded to the trial court for further proceedings consistent with this opinion.