IN the MATTER OF the MARRIAGE OF: Margaret C. JASPER, Plaintiff-Appellant-Petitioner,

v.

Elmer E. JASPER, Respondent.

Supreme Court

*No. 80–1069. Argued April 1, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 792.)

For the appellant-petitioner there were briefs by *DeBardeleben & Snyder* of Park Falls, and oral argument by *Daniel F. Snyder.*

For the respondent there was a brief (in court of appeals) by *Nikolay, Jensen & Scott* of Medford, and oral argument by *Raymond H. Scott*.

WILLIAM G. CALLOW, J. This is a review of a July 7, 1981, unpublished decision of the court of appeals which affirmed a property division and family support award of Price county circuit court, Judge David A. Clapp, in this May 1, 1980, divorce action.

Margaret and Elmer Jasper, who were forty-five and fifty-seven years of age, respectively, at the time of the divorce, were married nearly eight years prior to their separation and subsequent divorce. During the separation Margaret voluntarily left the family home and moved to Park Falls, Wisconsin, with their daughter Rachel. Margaret was awarded custody of Rachel. Elmer married late in life, having remained a bachelor for almost fifty years. Margaret had been married previously for a substantial period of time, and her ex-husband received custody of the six children from that marriage.

Elmer is employed as a cashier at the State Bank of Cazenovia. He also sells insurance through an insurance agency he purchased during the marriage which has its offices at the bank. The trial court concluded that Elmer "has an earning capacity of in excess of $32,000.00 per year which will probably gradually increase during the . . . [remainder] of his working life; that this earning capacity is a recent result of his long and faithful and competent service as a moderately paid bank employee."

Margaret worked approximately nine months during the marriage, most notably as a nurse's aide in a hospital. The trial court concluded that Margaret "[m]anaged the operation of the home, including cooking, cleaning and some interior decorating and painting." Margaret also provided child care for their daughter. In reflecting on

Margaret's earning capacity, the trial court concluded that she "could earn somewhat more than the $6,500.00 she is presently capable of earning when the minor child . . . is older . . . and is increasingly able to care for herself; that [Margaret's] present education consists of 11 years of public school and on-the-job nurse's training; that but for the responsibility of caring for [the child], the petitioner would be capable of earning in excess of $8,000.00 per year; that petitioner has suffered no discernible economic setback by reason of her eight-year marriage." At the time of trial, Margaret was employed as a nurse's aide at the Park Manor Nursing Home, earning $3.35 per hour, for a gross bimonthly income of $241.20. We note that, although Margaret's gross bimonthly income was $241.20, her net income was $141. Margaret has not filed a financial declaration statement, although she claims that the disparity between gross and net income is attributable to withholding taxes, and the trial court accepted this. We would comment, however, that these figures are most likely inaccurate or Margaret has received a substantial income tax refund.

Margaret submitted a monthly budget for herself and daughter of $1,050.50 which has not been contested. Elmer submitted a monthly budget of $1,650.

The trial court employed a two-step method in dividing the property. First, the court returned to each party the assets each brought to the marriage, attributing $5,635 to Margaret and $23,650 to Elmer. Second, the court divided the remaining marital estate of $88,630 accumulated during the marriage, declaring it was awarding 40 percent to Margaret ($35,452) and 60 percent to Elmer ($53,178). While we find these figures difficult to reconcile, because they are undisputed, we will accept them. The payments to effect Margaret's property division are to be made in monthly installments of $436.50 over a period of ten and one-half years.

While the divorce action was pending, a spousal maintenance payment of $200 per month and a child support payment of $400 per month were awarded to Margaret. In the divorce judgment the trial court eliminated these awards and, instead, awarded a $200 per month payment designating it as "family support." This designation permits Elmer to take such payments as a tax deduction and requires Margaret to report the payments as income. Margaret may, however, claim the child as a tax dependent.

Margaret appealed the judgment, asserting that the trial court abused its discretion in making an unequal and inadequate property division based upon inappropriate criteria and, also, by providing an inadequate award for family support. The court of appeals affirmed the trial court's judgment in its entirety. We reverse the court of appeals' decision.

We are presented with two issues on this appeal, both dealing with the propriety of the discretion exercised by the trial court. The first issue presented is whether the trial court's apportionment of the division of the marital estate to Margaret constituted an abuse of discretion. The second issue is whether the trial court abused its discretion in awarding Margaret and daughter $200 per month in family support.

We note at the outset that a trial court's award of family support and division of property will be overturned only if an abuse of discretion has occurred. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 226–27, 313 N.W.2d 813 (1982) ; *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 45–46, 260 N.W.2d 658 (1978) ; *Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 89–90, 248 N.W.2d 417 (1977). "An abuse of discretion occurs when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the

circumstances, either excessive or inadequate." *Perrenoud, supra* at 46. Furthermore, as we have recently stated: "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. . . . [M]ost importantly, a discretionary determination must be the product of a rational mental process by which the facts of the record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). We would emphasize that a trial court in a proper exercise of discretion may reasonably reach a conclusion which we would not reach, and it will be upheld if a reasonable court could arrive at that conclusion using the rational mental process we have observed above. *Id.*

The legislature has stated that any property shown to have been acquired by either party prior to or during the course of the marriage by gift, bequest, devise, or inheritance should remain with the party acquiring it, and it may not be subject to the property division unless this would create a hardship on the other party or any children of the marriage. The legislature has then directed that "[t]he court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering [the statutorily enumerated factors]." Sec. 767.255, Stats.[1] Among the

---

[1] Sec. 767.255, Stats., provides:

"767.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are

factors a trial court is to consider are length of the marriage, the contribution of each party to the marriage—including each party's contribution in homemaking and child care services, any work experience—con-

situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties. Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(2r) Whether one of the parties has substantial assets not subject to division by the court.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic

sidering length of absence from the job market, and custodial reponsibilities for children. Because the division of the estate is an equitable proceeding, the legislature has prescribed that the court may consider additional factors which it determines are relevant based upon the facts and circumstances of the individual case.

Margaret argues that the trial court's award of only 40 percent of the marital estate is inadequate and an abuse of discretion. She contends that the court improperly relied upon the fact that she was previously married and ignored her domestic contributions to the marriage in contravention of sec. 767.255, Stats. Margaret argues that both the trial court and court of appeals have required her to demonstrate financial contributions to the marriage in addition to her domestic services and to show special demands or contributions in order to establish her right to an equal share of the estate. Margaret advances this argument in response to the following language in the conclusions of law of the trial court:

"This Court notes that no special demands were made upon petitioner nor special contributions made by her in this, her second marriage, of just under eight years' duration. Furthermore, the financial accumulation was

family support payments under s. 767.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

made almost totally through the respondent's efforts as a bank employee, officer and insurance entrepreneur. The situation clearly calls for any inequality in the division of property to be made in favor of the respondent."

Similarly, the court of appeals on its review, opined:

"The unequal division of the remaining assets was based upon the length of the marriage, the economic contribution to the marriage by each party, and *the absence of special demands made upon or of special contributions made by Margaret.* Margaret's argument that the court did not give proper economic value to her homemaking and child care services is not supported by the record. While the court stated, 'the financial accumulation was made almost totally through [Elmer's] efforts as a bank employee, officer and insurance entrepreneur,' the court did not make an 'almost total' award of the assets accumulated during the marriage to Elmer. From the figures supplied on Elmer's salary during the length of the marriage *and the absence of special demands on Margaret or of special contributions made by her,* the trial court could conclude that Elmer's economic contribution exceeded the value of Margaret's housekeeping and child care services. We conclude that the trial court's division of the assets accumulated during the marriage was not an abuse of discretion." (Emphasis added.) (Footnote omitted.)

We note that marriage is to be viewed as a partnership, and "in dividing property upon divorce, the contribution of a full-time homemaker may be considered greater than, or at least as great as, that of a working spouse. The fact that one party to the marriage worked outside the home while the other cared for the home and children has little bearing on the outcome of the property division if marriage is to be viewed as a 'partnership,' in which the parties contribute according to their respective abilities to the acquisition and preservation of marital assets." *Perrenoud,* 82 Wis. 2d at 49. Our review of the record in this case reveals that Elmer

contributed to the care and companionship of the minor child, in addition to his nearly sole financial responsibility for the family. We note that Margaret's homemaking chores were lessened by testimony in the record revealing that the family ate meals out between four and six evenings per week.

Part of the rationale in creating the presumption of equal property division is that the homemaking partner has contributed services which have enabled the financially supporting partner to achieve his or her station in life, and in so doing the homemaking partner has lost ground in the job market. In the instant case Elmer married late in life after he had achieved his "station in life." The trial court specifically commented that Elmer's earning capacity was the result of "long and faithful and competent service as a moderately paid bank employee." Similarly, the trial court concluded that Margaret "has suffered no discernible economic setback by reason of her eight-year marriage."

We note that the legislatively prescribed 50 percent presumption in awarding property division is a rebuttable one. In this case, after thoughtful consideration of the statutory factors, the trial court concluded Elmer's contributions to the rather brief marriage tipped the scale in his favor, justifying alteration of the equal property division presumption. In noting the absence of any special contributions made by Margaret, we conclude the trial court intended nothing more than to comment that Margaret's contributions to the marriage were not of such a nature to tip the scale back. In other words, if Elmer's contributions to the marriage were found to exceed the 50 percent presumption, it would be impossible to award Margaret 50 percent of the estate. We would not hesitate to approve an award

to the homemaking partner of greater than a 50 percent share of the property division if the facts and circumstances of the individual case justified such a result.

We find Margaret's allegation, that the trial court improperly considered the fact that she had been married previously in awarding the unequal property division and was, apparently, punishing her, totally unsupported by a careful review of the record.

We have addressed the issues raised by the parties and find no abuse of discretion in the division of estate within the parameters of those issues. However, we reverse and remand for the trial court's consideration of the correctness of Margaret's award in light of the *present value* of the installment award since the record is devoid of any reference to this important consideration. *Bloomer v. Bloomer,* 84 Wis. 2d 124, 132, 267 N.W.2d 235 (1978).

We appreciate the inherent difficulties in providing funds for the payment of division of estate awards to the party receiving cash in lieu of an asset. Many assets are not divisible, and a cash equivalent is awarded by installment payment over a specified time. This cash equivalent, however, must reflect the award's income producing value over the term of the payment. A cash payment is usually made with after tax dollars, and tax implications should also be a subject of judicial consideration. Simply stated, the party making the installment cash payment over an extended period of time ought to compensate the receiving party for the after tax money the award would earn during the installment period commensurate with the amount the award would

have produced if it had been paid in full at the time of judgment.

■

Turning to the second issue, the propriety of the $200 per month family support award, we note that similar factors relevant to a property division are to be considered in determining a support award. An award of maintenance or family support[2] is based upon the needs and income producing abilities of the parties, with consideration of other supplementary factors. *Besaw v. Besaw*, 89 Wis. 2d 509, 517, 279 N.W.2d 192 (1979); *Czaicki v. Czaicki*, 73 Wis. 2d 9, 18, 242 N.W.2d 214 (1976).

In the instant case the trial court considered the uncontested monthly budget of $1,050.50 in assessing the needs of Margaret and Rachel. The trial court concluded that, but for her responsibilities in caring for Rachel, Margaret could earn in excess of $8,000 per year. In contrast, the trial court found Elmer's earning capacity to be in excess of $32,000 per year, subject to a gradual increase. Elmer's monthly budget was $1,650.

The trial court, after considering the length of the marriage and earning capacity of the parties among other factors, concluded that $200 per month family support should be awarded as Elmer's contribution to the needs of Margaret and Rachel. Margaret is to receive $436.50 per month for one hundred twenty-six months in property division. The trial court found Margaret had a gross bimonthly income of $241.20 and a net bimonthly income of $141. We have previously observed that this is probably in error. Margaret also receives $150 every

---

[2] Sec. 767.261, Stats., provides:

"767.261. **Family support.** The court may make a financial order designated 'family support' as a substitute for child support orders under s. 767.25 and maintenance payment orders under s. 767.26."

six months as interest on a certificate of deposit in her possession. Combining Margaret's present earnings and family support award, and even including her property division award, she does not receive enough money to meet an undisputed monthly budget of $1,050.50.

The court of appeals upheld this award as sufficient because Margaret is in good health, has no special needs, and has premarital assets to live on. It further found that Elmer's property settlement obligations, together with his monthly expenses and family support payments, exceed his monthly income. We note, however, that Elmer has some assets which could be liquidated. We find it difficult to justify Elmer's monthly budget, based on the needs of a single individual, when it is compared to a substantially lower monthly budget submitted by Margaret for the needs of two individuals. At oral argument counsel for Elmer justified his need on the basis of a life style he had established as a bachelor. Life styles must adjust to economic realities.

We note that it is an intent of the family code as expressed in Chapter 105, Sec. 2, Laws of 1977:

"[T]hat the standard of living of any minor children of the parties be maintained at the level the children would have enjoyed had the marriage not ended, so that insofar as is possible, the children will not suffer economic hardship."

With this in mind, we conclude that as long as Rachel is a dependent minor the present family support award is inadequate and, consequently, an abuse of discretion. We reverse the decision of the court of appeals with respect to the family support award and remand the case with directions that the family support award be increased to meet the monthly subsistence needs of Margaret and Rachel. In so doing, the trial court should

require Margaret to file a financial declaration statement in order to determine why there is such disparity between Margaret's gross and net earnings.

*By the Court.*—The decision of the court of appeals is reversed, and cause remanded for further proceedings consistent with this opinion.

CECI, J., took no part.