IN RE the MARRIAGE OF: Gordon D. HAUGAN, Petitioner-Respondent,

v.

Patricia J. HAUGAN, Respondent-Appellant-Petitioner.

Supreme Court

*No. 82–1577. Argued February 2, 1984.— Decided February 28, 1984.*

(Also reported in 343 N.W.2d 796.)

For the respondent-appellant-petitioner there were briefs by *Sharren B. Rose* and *Nelson & Schmeling,* Green Bay, and oral argument by *Sharren B. Rose.*

For the petitioner-respondent there was a brief by *John E. Herald* and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay, and oral argument by *John E. Herald.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed April 26, 1983, affirming a division of property in a judgment of divorce of the circuit court for Brown County, Charles E. Kuehn, Circuit Judge.  The issue on review is whether the circuit court abused its discretion by failing to compensate the wife adequately for her contribution to her husband's medical education and training when the circuit court divided the marital property and denied an award for maintenance upon dissolution of the marriage.  Because we conclude that the circuit court abused its discretion, we reverse the decision of the court of appeals; we vacate that part of the circuit court's judgment relating to the division of the property and denial of an award for maintenance; and we remand the matter to the circuit court.

The couple, Patricia and Gordon Haugan, were married on August 4, 1973.  About a month later the husband entered medical school and the wife began gainful employment.  Each already had a bachelor's degree.  For the first four years of their marriage the wife taught elementary school while the husband attended medical school in South Dakota and then in Minnesota.  The wife's total earnings of between $26,187 and $28,974 supported the couple during these four years.  The husband received a stipend of $2,200 and borrowed money to pay education expenses.

The wife continued to teach school for the next three years of their marriage while the husband, having graduated from medical school, was in a medical residency in Chicago. The husband's aggregate earnings for that three-year period were between $49,254 and $49,548, and the wife's were between $43,339 and $45,056. In addition to working full time outside the home, the wife performed virtually all of the household duties over the seven years.

In 1980, in anticipation of the husband's completing his medical training and beginning this practice of medicine, the couple bought a house in Green Bay, Wisconsin, and the wife resigned from her teaching job. On May 13, 1980, however, about two months before the husband completed his medical residency, the couple separated. In August 1980 the husband began practicing pediatric medicine in Green Bay at an annual salary of $48,000 ($4,000 a month) plus bonuses, for a total annual compensation of $55,498. The wife was unemployed until February 1981, when she began a job with IBM in Green Bay at an annual salary of $19,680 ($1,640 a month). Between August 1980 and August 1981 the husband voluntarily paid the wife a total of $10,150 ($817 a month in temporary maintenance plus half of a joint income tax refund of $693).

The wife testified that at the time of the marriage she and her husband shared the expectation that she would support him while he obtained his medical education and that he would support her after he began his medical practice, allowing her to pursue the career of a homemaker, wife, and mother. The husband argued that the record did not establish a "mutual agreement" since it contained no evidence of a written or formalized agreement. The trial court concluded that "no mutuality of such 'contract' had been established" and that the wife's expectation was "not an express or implied contractual

arrangement." Nonetheless, cognizance must be taken of the fact that the husband had a general idea of the wife's expectations. *Roberto v. Brown,* 107 Wis. 2d 17, 20, 318 N.W.2d 358 (1982).

At the time of the divorce the couple had acquired few assets and substantial liabilities.

The couple's assets included cars (valued at $4,650), furniture (valued at $10,675), an interest in a teacher's retirement fund (valued at $2,808), shares of stock in the clinic where the husband worked (valued at $4,000), and the house in Green Bay (valued at $102,000). The couple's total assets were valued at $124,133.

The couple's liabilities included debts the husband incurred before marriage ($1,365), debts incurred during marriage for living expenses and acquisition of property ($28,529), debts incurred for the husband's medical education ($13,457),[1] the land contract on the Green Bay home ($80,013), and the 1981 real estate taxes ($2,812). The couple's total liabilities at the time of the divorce amounted to approximately $126,176, thus exceeding the value of the assets.[2]

The trial court divided the parties' assets as follows: It treated the $20,000 equity in the house as an asset subject to property division and awarded the wife $10,000, payable by the husband in four equal annual

[1] The trial court found that the total cost of education-related expenditures between 1973 and 1977 was $15,977. The wife asserts that an additional $1,942.40 of book expenses, $402 of relocation expenses, and $1,440 of loan payments were incurred during residency training. The unpaid medical school loans at the time of the divorce trial totaled $13,457.

[2] According to the findings of the trial court, after the parties separated the husband depleted the marital estate by unilaterally incurring some $32,000 in debts, without the permission of the wife, to remodel the house and to buy furniture. We have omitted these assets and debts from the statement of assets and liabilities, viewing these assets and liabilities as the husband's and not part of the marriage.

installments, with interest at 10 percent. The husband was awarded the other $10,000 equity by being awarded the house subject to the land contract liability.

The trial court divided the tangible personal property as follows: It awarded the wife one car (valued at $1,800) and furniture (valued at $7,300); it awarded the husband two cars (valued at $2,850) and furniture (valued at $3,375). The wife received the interest in the teacher's retirement funds (valued at $2,808 before taxes); the husband received the clinic stock (valued at $4,000). Thus she received assets valued at $11,908 plus the $10,000 payable in installments that represented one half of the equity in the house; he received assets valued at $10,225, plus one half of the equity in the house valued at $10,000.

All of the debts of the parties—the debts the husband incurred before marriage, the debts the parties incurred during marriage, and the debts the husband incurred for medical education—were assigned to the husband.

The trial court's explanation of its division of the marital property—assets and liabilities—was limited. The trial court stated that although it was not enumerating all the factors set forth in secs. 767.255 and 767.26, Stats. 1981–82, it had considered all the statutory factors and it intended to award the wife more than 50 percent of the marital property.

The trial court denied the wife's request for maintenance payments on the grounds that her post-divorce income would exceed her pre-divorce income and she would not be in financial need after the divorce.

On appeal from the portion of the judgment denying maintenance and awarding property division, the court of appeals affirmed the judgment of the circuit court. It concluded that the circuit court had not abused its discretion in denying maintenance since the wife was employed and in good health. It concluded that the property

division was equitable because the marital estate had a negative value; the husband's net property award was a negative figure because he had to pay the debts; and the wife's share of the assets valued at $21,908 was greatly in excess of the 50-50 marital property division set forth in the statutes.

The problem this case poses is not uncommon.[3] University degree-divorce decree cases are frequent. In many marriages, while one spouse pursues an undergraduate, graduate, or professional degree or license, the other works to support the couple and foregoes his or her own education or career and the immediate benefits of

---

[3] There have been numerous cases and commentary dealing with the issue of compensation for contributions to a spouse's educational degree. *See, e.g., In re Sullivan,* 8 F.L.R. 2165 (Calif. Ct. App. 4th Dist., Jan. 8, 1982); *Inman v. Inman,* 578 S.W.2d 266 (Ky. Ct. App. 1979); *Leveck v. Leveck,* 614 S.W.2d 710 (Ky. Ct. App. 1981); *McGowan v. McGowan,* 10 F.L.R. 1155 (Ky. Ct. App. Dec. 30, 1983); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Hill v. Hill,* 91 N.J. 506, 453 A.2d 537 (1982); *Lynn v. Lynn,* 91 N.J. 510, 453 A.2d 539 (1982); *Lesman v. Lesman,* 88 A.D.2d 153, 452 N.Y.S.2d 935 (1982); modifying, 110 Misc. 2d 815, 442 N.Y.S.2d 955 (1981); *Hubbard v. Hubbard,* 603 P.2d 747 (Okla. 1979). For commentary, *see, e.g.,* Mullenix, *The Valuation of an Educational Degree at Divorce,* 16 Loyola L.A.L. Rev. 227 (1983); Kraufkopf, *Recompense for Financing Spouse's Education: Legal Protection for the Marital Investor in Human Capital,* 28 Univ. Kan. L. Rev. 379 (1980); Erickson, *Spousal Support Toward the Realization of Educational Goals: How the Law Can Ensure Reciprocity,* 1978 Wis. L. Rev. 947; Note, *Equitable Distribution of Degrees and Licenses: Two Theories Toward Compensating Spousal Contributions,* 49 Brooklyn L. Rev. 301 (1983); Note, *Professional Degrees as Marital Property,* 6 Harv. Women's L.J. 208 (1983); Note, *The Supporting Spouse's Rights in the Other's Professional Degree as Marital Property,* 6 Harv. Women's L.J. 208 (1983); Note, *The Supporting Spouse's Rights in the Other's Professional Degree Upon Divorce,* 35 U. Fla. L. Rev. 130 (1983); Note, *Disposition of Professional Degree upon Marriage Dissolution: DeLa Rosa v. DeLa Rosa,* 66 Minn. L. Rev. 1205 (1982).

a second income which the student spouse might have provided. The couple typically expects that the degree will afford them a higher shared standard of living in the future. That standard of living is never realized by the supporting spouse when the marriage breaks up just as the newly educated spouse is beginning the long-awaited career. In addition, little marital property has accumulated, because the couple's income was used for education and living expenses.

In a marriage of significant duration, the marital partners in sharing life together—with all its joys, sorrows, debts, and assets—share the return on their investment in the marriage. When the marriage ends in divorce the accumulated property is divided according to law and maintenance may be awarded.

But in a marital partnership where both parties work toward the education of one of the partners and the marriage ends before the economic benefit is realized and property is accumulated, it is unfair under these circumstances to deny the supporting spouse a share in the anticipated enhanced earnings while the student spouse keeps the degree and all the financial rewards it promises. As this court has recognized, "in a sense," the degree "is the most significant asset of the marriage" and "it is only fair" that the supporting spouse be compensated for costs and opportunities foregone while the student spouse was in school. *Lundberg v. Lundberg*, 107 Wis. 2d 1, 14, 318 N.W.2d 918 (1982). A compensatory award to the supporting spouse can ensure that both marital partners, and not only the one who has received the education, participate in the financial rewards attributable to the enhanced earnings of the student spouse.

The legislature recognized in the Divorce Reform Act of 1977 that the wife or husband who invested in a spouse's education should be compensated upon divorce.

The legislature said that "a spouse who has been handicapped socially and economically by his or her contributions to a marriage shall be compensated for such contributions at the termination of the marriage insofar as this is possible." Sec. 1, ch. 105, Laws of 1977.

Such compensation may be accomplished under the statutes through maintenance payments, property division, or both.

Sec. 767.26, Stats. 1981–82, which governs maintenance payments, provides that the trial court may consider, among other factors, "the educational level of each party at the time of marriage and at the time the action is commenced," and "the contribution by one party to the education, training or increased earning power of the other."[4]

---

[4] Sec. 767.26, Stats. 1981–82, provides as follows:

**767.26 Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1) (g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the

Sec. 767.255, Stats. 1981–82, which governs property division, directs the trial court to presume that the marital property is to be divided equally between the parties but authorizes the trial court to alter this presumed division after considering such factors as "the contribution by one party to the education, training or increased earning power of the other," and "the earning capacity of each party."[5]

expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

[5] Sec. 767.255, Stats. 1981–82, provides as follows:

**767.255 Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties. Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

(1) The length of the marriage.

In two recent divorce cases this court interpreted these legislative directives as they applied to university degree-divorce decree cases such as this one. See *Lundberg v. Lundberg,* 107 Wis. 2d 1, 318 N.W.2d 918 (1982); *Roberto v. Brown,* 107 Wis. 2d 17, 318 N.W.2d 358 (1982). In both cases we interpreted the statutory

(2) The property brought to the marriage by each party.

(2r) Whether one of the parties has substantial assets not subject to division by the court.

(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

(4) The age and physical and emotional health of the parties.

(5) The contribution by one party to the education, training or increased earning power of the other.

(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(10) The tax consequences to each party.

(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(12) Such other factors as the court may in each individual case determine to be relevant.

scheme to require the trial court to consider granting compensation to the supporting spouse. We held that the supporting spouse was entitled to be fairly compensated for the contribution to the support of the student spouse. We further held that the divorce statutes provide a flexible means by which the trial court may examine all the relevant circumstances of the particular case and can, in its discretion, award just compensation to a supporting spouse by using either maintenance or property division or both.

In exercising its broad discretion in rendering a fundamentally fair and equitable decision in each case, the trial court has the difficult task of quantifying the value of the supporting spouse's and student spouse's contributions to the marriage and determining the rights and responsibilities of the parties on divorce. Because circumstances vary so much from case to case, this court cannot set down a formula for the trial court to apply in assigning a dollar value to each partner's contribution. We can, however, suggest several approaches for the trial court to consider in reaching its decision as to a maintenance award, property division, or both for the supporting spouse. These approaches are illustrative only; there are other approaches.

One approach the trial court may consider is the cost value approach whereby it calculates the value of the supporting spouse's contributions, not only in terms of money for education and living expenses but also in terms of services rendered during the marriage. In this case, for example, the wife worked full time outside the home and also performed the household duties, and the fair market value of those homemaking services might be considered along with her financial input. Furthermore, the trial court should consider adjusting the value of the supporting spouse's contributions by a fair rate of return or for inflation. Such an award is restitutionary

in nature; it does not account for a return on the supporting spouse's investment in terms of a share in the future enhanced earnings of the student spouse.

On review the wife in this case urges that the trial court should have calculated the contributions she made to the support of her student husband by using the cost value approach set forth in *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981).

Although this court in *Lundberg* did not directly address the question of calculating the costs of support to determine compensation to the supporting spouse, we did refer to *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981), as an example of a case where a court compensated the working wife by awarding reimbursement for her contributions to the student husband's support and education. *Lundberg v. Lundberg, supra,* 107 Wis. 2d at 9. In *DeLa Rosa, supra,* 309 N.W.2d at 759, the Minnesota court developed the following formula for awarding such compensation to the working wife:

"We subtract from . . . [the working spouse's] . . . earnings her own living expenses. This has the effect of imputing one-half of the living expenses and all the educational expenses to the student spouse. The formula subtracts from . . . [the working spouse's] . . . contributions one-half of the couple's living expenses, that amount being the contributions of the two parties which were not used for direct educational costs;

working spouse's financial contributions to joint living expenses and educational costs of student spouse

*less*

½ (working spouse's financial contributions *plus* student spouse's financial contributions *less* cost of education)

*equals*

equitable award to working spouse." *DeLa Rosa, supra,* 309 N.W.2d at 759.

Using this formula, the wife in this case asserts that she contributed $69,526 to $74,030 in earnings to the marriage; that her husband contributed earnings and stipends of $51,454 to $51,748; that the direct costs of his medical education were $18,220; and that he contributed medical school loans of $13,457 (valued as of the trial date). Applying these figures to the *DeLa Rosa* formula, the wife calculates her contribution as $13,000, without including interest, adjustments for inflation, or her non-financial contributions. The wife introduced evidence at trial that the value of the $13,000 contribution indexed for inflation is $28,560. *See also Lundberg, supra,* 107 Wis. 2d at 5.

A second approach is looking at opportunity costs. The trial court may in determining the award to the supporting spouse consider the income the family sacrificed because the student spouse attended school rather than accepting employment. In this case the wife introduced evidence that the husband's increased earnings during the seven-year marriage had he not pursued medical education and training would have been $45,700 after taxes, or $69,800 indexed for inflation. *See also Lundberg, supra,* 107 Wis. 2d at 5.

A third approach enables the trial court to consider compensating the supporting spouse according to the present value of the student spouse's enhanced earning capacity. This approach recognizes the spouse's lost expectation of sharing in the enhanced earning capacity; it gives the supporting spouse a return on his or her "investment" in the student spouse measured by the student spouse's enhanced earning capacity. In this case an economist, called as a witness by the wife, estimated the value of the husband's enhanced earning capacity to be $266,000. The economist's figure was the product of multiplying the husband's after-tax annual enhanced earnings of $13,000 (the difference between the hus-

band's annual salary as a physician and the 1979 mean salary for white college-educated males in his age group) by 32.3 (estimated years remaining in the husband's expected working life) discounted to its present value. *See also Lundberg, supra,* 107 Wis. 2d at 5. Using this calculation the wife asserts she would be entitled to one half of the present value of the husband's enhanced earning capacity, or $133,000.

Because many unforeseen events may affect future earnings, this third approach has been subject to criticism. Calculations of the expected stream of income may not take into account such variables as market opportunities, individual career choices and abilities, and premature death. Other approaches are, however, subject to criticism for giving the student spouse a windfall and for failing to recognize the supporting spouse's lost expectations.

Another approach is a variation of the labor theory of value suggested by wife's counsel at oral argument. Under this approach the trial court considers the value of the supporting spouse's contribution to the marriage at one half of the student spouse's enhanced yearly earning power for as many years as the supporting spouse worked to support the student. Under this theory the wife's contribution might be valued at $45,500 (one half of $13,000 $\times$ 7), which perhaps should be discounted to present value.

As stated before, no mathematical formula or theory of valuation settles the case. Each case must be decided on its own facts. The guiding principles for the trial court are fairness and justice. Our legislature has created a progressive and flexible scheme for trial courts to compensate a supporting spouse; flexibility will maximize the fairness achieved in each case. Leaving the ultimate determination of the award and the manner of arriving at it to the trial court's discretion comports

with the notion of flexibility inherent in secs. 767.255 and 767.26, Stats. 1981–82, and recognized by this court in *Lundberg* and *Roberto*. Accordingly the trial court may in each case use one or more of the above described approaches, as well as any other approach suitable for that case.

■

The trial court's discretion must, of course, be exercised within the guidelines set forth in the statutes and cases. And whatever factors the trial court takes into account in determining the award to the supporting spouse, it must also take into account the student spouse's contributions and efforts in supporting the family and attaining the degree and the efforts that will be expended in earning the enhanced income. The student spouse has worked hard to obtain the degree, will have to work hard to earn the future stream of income, and should not be penalized. Granting equity to the supporting spouse should not result in inequity to the student spouse.

On review of the trial court's award this court will not disturb the trial court's division of marital property or award or denial of maintenance unless an abuse of discretion is shown. *Jasper v. Jasper,* 107 Wis. 2d 59, 63, 318 N.W.2d 792 (1982). The exercise of discretion, however, is not the equivalent of unfettered decision making. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 227, 313 N.W.2d 813 (1982). The trial court has to articulate its reasoning on the basis of the standards which the legislature and this court have set forth as guidelines for determining property division and maintenance. The trial court's articulation of its reasoning process is essential to aid the trial court in reaching a reasonable determination and to aid this court in giving meaningful review of the discretionary decision. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) ; *In the Interest of D.H.,* 76 Wis. 2d 286, 305, 251 N.W.2d 196

(1977). A reviewing court will uphold the trial court's discretionary determination of maintenance and property division if it is based on facts appearing in the record and on the application of appropriate legal standards and the award itself is not, under the circumstances, either excessive or inadequate. *Bahr v. Bahr*, 107 Wis. 2d 72, 77, 318 N.W.2d 391 (1982).

In this case we conclude that the trial court abused its discretion in three respects: it improperly based its denial of maintenance on the wife's lack of need; it failed to articulate fully its reasoning as to denial of maintenance and as to the property division; and the award was clearly inadequate to compensate the wife under the circumstances of this case.

In making its determination as to maintenance, the trial court denied maintenance to the wife stating that the wife was young, in good health, and lacked financial need. This reasoning is contrary to *Lundberg* in which we held that even though the wife was not in need she might be awarded maintenance to compensate her for her contribution to the husband's education, training, and enhanced earning capacity. *See also Roberto v. Brown, supra*, 107 Wis. 2d at 22.

While the trial court specifically stated that it considered the husband's enhanced earning capacity, it did not explain why it nevertheless denied maintenance to the wife. In determining maintenance payments, the trial court is supposed to consider the educational level of the parties at the time of marriage and divorce, the contribution by one party to the education, training or increased earning power of the other, and the property division. Sec. 767.26 (3) (4) (9), Stats. 1981–82. In this case these factors point toward awarding maintenance, yet the trial court denied maintenance. Under these

circumstances denial of maintenance without an articulation of a rationale constitutes an abuse of discretion.

Although the trial court stated that "this record requires other than a fifty/fifty division," it failed to explain how it would compensate the wife for her contribution to the husband's education and how it arrived at the property division as a form of compensation. The legislature has directed the trial court to divide the marital property equally between the parties but has authorized the trial court to alter this distribution after considering such factors as the contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking, the contribution by one party to the education, training, or increased earning power of the other, the earning capacity of each party, and the maintenance payments. Sec. 767.255 (3) (5) (6) (8), Stats. 1981–82.

In the trial courts' division of property the wife received approximately 50 percent of the assets and was held responsible for none of the debts. Thus the wife might be viewed as having received more than the statutory 50 percent presumptive share of property through her release from debts. To calculate the amount of benefit she may have received from her release from debt, we must analyze the debts the husband assumed upon the divorce. We do not view the wife as benefiting from the husband's assumption of the education expenses, the land contract liability, or the real estate. Since the husband received both the enhanced earning capacity and the home (in which he had lived during the separation), he should rightfully pay the education expenses, the land contract balance, and the real estate taxes. These debts go along with the assets.

The wife did, however, benefit when the trial court required the husband to pay the joint marital debt of approximately $28,000 incurred for acquisition of prop-

erty and living expenses. The wife's share of this debt would apparently be $14,000. Indeed on review the wife acknowledges that she received an approximate $14,000 benefit from the trial court's assignment of debts, but she asserts that the release from debts is inadequate to compensate her for contributing total financial and homemaking support of the family unit for four years, contributing almost one half of the financial support of the unit for three years, and foregoing the husband's earnings during this period and his enhanced earnings in the future.

The husband argues, in effect, that the $14,000 the wife received in excess of the 50-50 marital property division is adequate compensation for her contribution since her total financial contribution during the marriage was $18,000 to $22,000 more than the husband's and that one half of this sum is attributable to his support and one half to hers.[6] The husband therefore argues that the wife was compensated $14,000 for her financial contribution to her husband of $9,000 to $12,000.

[6] The court of appeals calculated this sum as follows:
"Gordon earned $1,000 for the years 1973 through 1976, and $50,454.50 to $50,748 for the years 1977 through 1980, and therefore contributed $51,454.50 to $51,748 to the marriage. Patricia earned $26,187 to $28,974.15 for the year 1973 through 1976, including a $546.47 withdrawal from her retirement fund. During the years 1977 through 1980, Patricia earned $43,339 to $45,056.31, including an $808.57 withdrawal from her retirement fund. Patricia's total contribution to the marriage was $69,526 to $74,030.46. Subtracting Gordon's total contribution from Patricia's, a figure of $18,071.50 to $22,282.46 results." (Footnote 2 of court of appeals decision)

This calculation of the supporting spouse's contribution results in a slightly different figure than the *DeLa Rosa* formula. The wife claims the court of appeals calculation does not take into account the education expenses paid by the couple during the residency period which should be viewed as additional support for the husband. *See* note 1, *supra*.

We are not persuaded by the husband's reasoning. His calculation ignores the wife's non-financial contribution to the marriage and does not include a rate of return on the wife's contribution or adjustment for inflation or consideration of her lost expectation of sharing in his enhanced earning capacity to which she contributed. Using only a factor for inflation, the wife estimates her $13,000 contribution to the marriage as being worth $28,000 at the time of divorce. Thus the wife asserts on review that in addition to the release from liability of $14,000, she is entitled to an additional award of at least $14,000.

The husband further argues that the award puts the wife in the same position after divorce as she was in before marriage. She leaves the marriage with some property and a job. She did not want further education and was not thwarted in the enjoyment of a career. We are not persuaded by this reasoning because it fails to address the issue which this court has recognized in the university degree-divorce decree cases, namely, that concepts of fairness and equity require that the supporting spouse be compensated when the student spouse leaves the marriage with an earning capacity substantially increased through the other spouse's efforts and sacrifices and the supporting spouse leaves the marriage with little property and a lower earning capacity than the student spouse. Although the trial court may not be able to compensate the wife in this case by giving her the opportunity to pursue the career she wanted as a homemaker and parent, compare *Roberto v. Brown, supra,* 107 Wis. 2d at 22, the court can compensate her for the contribution she made in supporting the couple while the husband pursued his professional education.[7] According to the

---

[7] The husband suggests that the voluntary maintenance payments he made to the wife during the separation should be con-

record the wife's contribution was valued between $13,000 (without adjustment for interest and inflation) and $133,000.

Where the marriage terminates before the parties benefited economically from the university degree or license acquired during the marriage and before substantial assets are accumulated, an award of 50 percent or even more of the marital property is unlikely to compensate the supporting spouse fully. The wife would have received 50 percent of the property even if she had not supported her husband financially while he was in school. In *Roberto v. Brown, supra,* 107 Wis. 2d at 23, we held that a property award of 70 percent of the property was insufficient to compensate the wife for her contributions and foregone opportunities. The award in this case which denied maintenance, divided the assets equally, and relieved the wife of approximately $14,000 in debts seems insufficient compensation for her signficant financial and non-financial contributions to this marriage over a seven-year period, her lost expectation of sharing in his enhanced earning capacity, and the valuations of her contribution.

Because the trial court did not articulate its reasoning and did not specifically address the guidelines set forth in the statutes and the cases and because the award on its face appears inadequate, we conclude that the trial court abused its discretion. We therefore vacate the award and remand the cause to the trial court to reconsider all the evidence and provide for fair and equitable

sidered as additional compensation for her previous support. The trial court did not consider the temporary maintenance payments in this manner and neither do we. Temporary maintenance payments made during the pendency of a divorce action generally are not considered in making the final award. *Cf. Van Wyk v. Van Wyk,* 86 Wis. 2d 100, 115, 271 N.W.2d 860 (1978); *Leighton v. Leighton,* 81 Wis. 2d 620, 632, 261 N.W.2d 457 (1978) (court-ordered temporary alimony).

compensation to the wife for her contribution to the enhanced earning capacity of the husband, whether it be by further award of property or award of maintenance or both.

We reverse the decision of the court of appeals. We vacate that part of the judgment of the circuit court relating to the property division and denial of maintenance payments and remand the matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Decision of the court of appeals is reversed; judgment of the circuit court vacated in part; cause remanded to the circuit court for further proceedings.

WILLIAM J. CALLOW, J. (concurring). Although I agree with the result in this case, I do not agree with the majority's third formula for calculating a maintenance or property division award in cases where one spouse has contributed toward the other spouse's pursuit of an advanced educational degree. *See Supra* at pp. 213, 214. As I stated in my concurrence to our decision in *In re Marriage of Lundberg,* 107 Wis. 2d 1, 15, 318 N.W.2d 918 (1982), I do not approve of an award formula which is based upon the dependent spouse's future earning potential. Because the third formula is based upon future earning potential, I conclude that it goes beyond the compensation approved by this court in *Lundberg, supra,* and *Roberto v. Brown,* 107 Wis. 2d 17, 318 N.W.2d 358 (1982).

In *Lundberg* and *Roberto,* we approved compensation to the supporting spouse for his or her actual support contributions and foregone opportunities in his or her own career while the dependent spouse was pursuing an advanced education. *See Roberto,* 107 Wis. 2d at 22. In essence, we sought to make the supporting spouse whole

by compensating for actual sacrifices made during the marriage. We did not approve of any compensation formula which would award the supporting spouse a share of the dependent spouse's future earning potential.

The majority's third formula compensates the supporting spouse according to the value of the other spouse's enhanced earning capacity. The formula multiplies the spouse's after-tax annual enhanced earnings (based on the difference between the projected professional salary and the mean income for a person of that category with a college education) by the spouse's estimated remaining working years. *Supra* at p 214. This formula clearly is based upon the dependent spouse's future earning potential because it estimates what the spouse could earn over his or her career and then awards the supporting spouse a share of that potential income. This result, I believe, goes beyond the compensation this court approved in *Lundberg* and *Roberto*.

The majority characterizes this formula as a return on the supporting spouse's investment made in the other spouse's enhanced earning capacity. We did not approve of such an award in *Lundberg* and *Roberto*. Those decisions recognized only compensation for actual sacrifices made during the marriage, not for lost expectations of sharing in future potential earnings. The majority's formula goes beyond simple compensation for actual sacrifices made during the marriage and enters the category of an award based upon what the supporting spouse might have realized had the marriage continued.

As the majority recognizes, this type of award has been criticized because it fails to take into account unforeseen variables such as market opportunities, individual career choices and abilities, and premature death. *See Supra* at p. 214. I believe that these considerations make an award based on future potential earnings too speculative to be approved by this court. Accordingly, I

do not approve of the majority's third formula or any other award formula based upon future earning potential.

I am authorized to state that JUSTICE LOUIS J. CECI joins in this concurring opinion.