747 So.2d 628 (1999)
Linda Kay O. KENNARD, Plaintiff-Appellant,
v.
Albert Liles KENNARD, Defendant-Appellee.
No. 99-445.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1999.
Rehearing Denied December 1, 1999.
Writ Denied February 25, 2000.
*629 Randal B. Tannehill, Baton Rouge, for Linda Kay Odom Kennard.
Michael B. Holmes, Baton Rouge, for Albert Liles Kennard.
BEFORE: YELVERTON, WOODARD, and PICKETT, Judges.
WOODARD, Judge.
In this family law dispute, Ms. Linda K. Odom Kennard appeals a judgment, awarding her former husband, Dr. Albert Kennard, $13,000.00 for his contributions to her education and finding that she had relinquished her survivors' benefits in Mr. Kennard's retirement plan with the Teachers Retirement System of Louisiana (TRSLA). For the following reasons, we reverse in part and affirm in part.

FACTS
At the time of their marriage on September 7, 1978, Mr. and Ms. Kennard respectively, held a doctoral and master's degree in education. In 1987, Mr. Kennard retired from his position as superintendent of the Allen Parish School Board and accepted a teaching position at McNeese State University (MSU). Ms. Kennard was then employed by the State of Louisiana Department of Education (SLDE).
In 1992, she enrolled in the Doctorate Degree program at MSU. She moved to Memphis, Tennessee, in July of 1993, to enroll in the Doctor of Education program at the University of Memphis. She received a salary from SLDE until October of 1993. Mr. Kennard remained in Kinder, Louisiana with their son, Joseph Christopher. He pursued his teaching career at MSU and provided Ms. Kennard with financial support of $13,000.00 cash, from October of 1993 to September of 1994. Ms. Kennard eventually obtained a Doctor of Education Degree in December of 1996. She is currently employed as a staff development coordinator with the Memphis City Schools.
In 1993, the Kennards experienced marital problems. Ms. Kennard filed for divorce on July 15, 1994, and Mr. Kennard reconvened for divorce on September 20, 1994. A divorce judgment was entered on October 28, 1994. The Kennards' community property was partitioned in a settlement finalized on January 3, 1997. On February 10, 1997, Mr. Kennard filed a motion to set child support and for contributions under La.Civ.Code art. 121. Additionally, he requested that the trial court issue an order, declaring that Ms. Kennard had relinquished her rights to survivors' benefits under his TRSLA retirement plan. In a judgment dated June 29, 1998, the trial court so held, and under La.Civ. Code art. 121, it awarded Mr. Kennard $13,000.00 as reimbursement for contributions to Ms. Kennard's education. Ms. Kennard appeals and Mr. Kennard answers the appeal.

ASSIGNMENTS OF ERROR
Ms. Kennard claims that the trial court erred in:
1. Finding that Mr. Kennard qualified for an award under Louisiana Civil Code Article 121.
2. Finding that the contributions made by Mr. Kennard qualified for reimbursement under La.Civ.Code art. 121.
3. Failing to recognize the contributions made by the appellant towards her own education.

*630 4. Failing to consider that the issue of educational expenses had been settled in the voluntary partition of community property.
5. Finding that the defendant had relinquished her survivorship rights in the Teacher's Retirement System account of plaintiff.
Mr. Kennard answers the appeal, claiming that the trial court's decision to limit his recovery to bare cash contributions was an error under La.Civ.Code art. 121.

LAW

REIMBURSEMENT FOR EDUCATIONAL CONTRIBUTION
Ms. Kennard's assignments of error numbers one through four, as well as Mr. Kennard's assignment of error generally allege that the trial court's grant of $13,000.00 to Mr. Kennard, as reimbursement for contribution, was an error.
The law pertaining to an action for reimbursement for educational contribution is set forth in La.Civ.Code art. 121, which states:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
Regarding the issue of the appropriateness of the amount awarded by the trial court under Article 121, we note that the parties entered into a set of stipulations, one of which provides the following:
D. Albert L. Kennard made financial contributions during the marriage to the education and training of Linda Odom Kennard at University of Memphis. Direct contributions from Albert L. Kennard to Linda Odom Kennard totalled (sic) $13,000 in 1993 and 1994.
Also, in its memorandum ruling and judgment, the trial court stated:
Under La.C.C. art 121 the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power. Comment (d) to Article 121 attempts to clarify the term "financial contributions" as follows:
(d) "Financial Contributions" include direct educational or training expenses paid by the claimant for the other spouse-such as tuition, books, and school fees. The term also includes financial contributions made to satisfy the living expenses of the supported spouse.
The parties stipulated that Albert Kennard made financial contributions toward Linda Kennard's doctoral degree during 1993 and 1994 totaling approximately thirteen thousand dollars ($13,000.00). The Court finds that these payments qualify as "financial contributions" under Art. 121, inasmuch as they were paid by petitioner to the defendant, with said amount increasing the defendant's earning power.
(Footnote omitted.) Thus, the issue in the instant case is not one of calculation of the amount to which Mr. Kennard may be entitled under Article 121, because we, as did the trial court, find that the parties' stipulations disposed of this issue. Therefore, the only remaining issue before us concerning these assignments of error is the propriety of the trial court's decision to award Mr. Kennard this stipulated amount.
The basis of the cause of action set forth by Article 121 is explained in Comment (c), as follows:

*631 Under this Article the court is empowered to compensate a divorcing or former spouse for financial contributions made during the marriage to the education, training, or increased earning power of the other spouse. The court may do so by making a special monetary award, over and above those authorized by the preceding section of this Chapter, to the spouse who made the contributions. In making such an award the court should keep in mind that the relevant equitable considerations weigh most heavily in favor of the contributing spouse in cases where the timing of the divorce prevents him from realizing benefits from the contributions during the marriage. The usual situation that has prompted the making of awards of this kind in other states has involved a wife who supported her husband through professional school, only to be divorced by him shortly after his graduation. E.g., In re Marriage of Washburn, 101 Wash.2d 168, 677 P.2d 152 (1984); Lundberg v. Lundberg, 107 Wis.2d 1, 318 N.W.2d 918 (1982). Usually the wife has had little opportunity to share in the husband's enhanced income, and ordinarily little or no community property has accumulated to be divided between them. Thus, the only way to compensate her is by means of a monetary award akin to support, but different from support in that it is not affected by the various factors that govern such an award. See Haugan v. Haugan, 117 Wis.2d 200, 343 N.W.2d 796 (1984) (holding that trial court should have awarded wife compensation for her contributions to support of husband while he was in medical school). In particular, fault on the part of either spouse that contributed to the breakdown of the marriage is not relevant to a claim under this Article.
Read in the light of the aforementioned comments, Article 121 provides a ground for monetary recovery which may come in addition to a support award or to a party's due share of community property. Yet, it does not preclude the use of a community property settlement to dispose, once and for all, of claims for reimbursement of educational contribution.
In the instant case, at the time of the community partition, the Kennards' major community property assets consisted of a family home in Kinder, Louisiana, for which the equity was appraised to be $60,000.00, and an insurance policy worth $30,000.00. Ms. Kennard's total share in these community property assets was one-half of $90,000.00 or $45,000.00. Notwithstanding, it is undisputed that Ms. Kennard only received $25,000.00 in satisfaction of her community share in these assets, rendering a $20,000.00 discrepancy between what she received and what she should have received. At trial, she explained that her willingness to take $20,000.00 less than that due her was, in part, in consideration of the $13,000.00 that her husband had contributed to her education.
In his testimony, Mr. Kennard, agreed with her:
Q: Dr. Kennard, do you recall in negotiations with Linda where it was discussed as regards the approximate $60,000.00 in equity in the home and approximately $30,000.00 in equity in a cash value life insurance policy that totals $90,000.00
A: Yes.
Q: Do you also recall in those negotiation process that it was agreed up through simple math that each one of your half's interest in that would be $45,000.00?
A: Yes.
Q: Do you also recall during those negotiations that in lieu of accepting that $45,000.00, Linda accepted $25,000.00 instead of the $45,000.00 as part of the cash pay out for the community property settlement?
A: Yes.
Q: Do you recall in those negotiations that the reason that she took $20,000.00 less than what she was entitled *632 to in equity in those two was because she wasya'll had previously discussed and she was taking into account the money that you sent her while she was in Memphis?
A: That was one of the things that she took into account.
Q: Well, maybeAnd I want to clarify this point because it's very important. Okay? You said that was one of the things that she took into account.
A: That's right.
Q: I'm asking you, did you both take into account?
A: Partially on my part.
Q: So that was part of the consideration?
A: Yes, sir.
Nevertheless, in an exchange with the trial court, Mr. Kennard changed his testimony regarding this issue.
THE COURT: When you signed or when you agreed to the voluntary partition, did you agree to give up Is that one of the things which you agreed to give up (sic) any claim to reimbursement for the expenses that you sent to her when she was at the University of Memphis?
Mr. KENNARD: No.
. . . .
THE COURT: He asked you if Linda took less and one of the reasons that she took less was because you had in discussion signified to her that you would give up any claim to reimbursement for educational expenses or increased value in earnings. Is that true?
Mr. KENNARD: No, because at that time, I don't think that I even knew about this article that has to do with that.
Denying Ms. Kennard's argument that the community property agreement extinguished Mr. Kennard's claim for reimbursement under Article 121, the trial court stated:
[W]hile she was enrolled in school and while she was receiving not only the benefits of direct contributions for her schooling, she also received certain indirect contributions by virtue of the community such as equity which might have accrued in the house by virtue of any mortgage payments, by any deposits which might have been done to the savings and/or bank accounts, IRA accounts, insurance policies, etcetera. And I know that that was taken care of in the partition of the community property, however there was no indication that Dr. Kennard chose to give up any rights that he had to 121 contribution or reimbursement and therefore the court is going to find in favor of Dr. Albert Kennard in respect to his claim.
(Emphasis added.) We find the trial court's decision to be a legal error. Once it stated that the issue of reimbursement for educational contribution had been stipulated to be $13,000.00 and "taken care of in the community property partition, the court could not award Mr. Kennard an additional $13,000.00 as reimbursement for educational contributions on the basis of Article 121. To do so would thwart efforts between the parties to settle their community disputes, and in the case sub judice, it would give Mr. Kennard the benefit of an unlawful double recovery. Accordingly, we reverse.

SURVIVOR'S BENEFITS
Ms. Kennard claims that the trial court erred in finding that she had relinquished her rights to survivorship in Mr. Kennard's retirement plan, as the plain language of the community settlement only surrenders her rights to his retirement benefits, which is a term of art exclusive of survivor's benefits.
An agreement entered into by spouses to voluntarily partition the assets, comprising their community property, is a compromise agreement which is governed by the same rules of construction that apply to contracts. Brignac v. Brignac, 96-1702 (La.App. 3 Cir. 6/18/97); 698 So.2d 953. As a contract, a compromise *633 agreement is the law between the parties, and thus, it must be interpreted according to the parties' common intent. La.Civ. Code art. 2045. Nevertheless, no further interpretation needs to be performed in search of the parties' intent when the words of the contract are clear and explicit and lead to no absurd consequences. La. Civ.Code art. 2046; Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741. Although the words used in a compromise agreement must usually be given their general, plain, ordinary, and popular meaning, "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047.
In the case sub judice, the disputed portion of the Kennards' community property partition reads as follows:
In consideration whereof, the said Ms. Kennard Kay Kennard, does by these presents, convey, transfer, set over and deliver unto Mr. Kennard Liles Kennard all of her right, title, and interest in the following described property, to-wit: ...
7. Retirement benefits of Mr. Kennard Liles Kennard with from [sic] Teacher's Retirements System of Louisiana.
(Emphasis added.) In its oral reasons for judgment, relying on Ordoyne v. Ordoyne, 94-1766 (La.App. 1 Cir. 4/7/95); 653 So.2d 839; and Contois v. Contois, 95-794 (La.3/8/96); 669 So.2d 1181, the trial court found that:
[B]y virtue of the voluntary partition of the community property, Mrs. Linda K. Odom Kennard gave up any and all benefits with respect to the Teachers Retirement System of Louisiana and the United States Social Security Administration just as Albert Kennard gave up any retirement benefits to her.
The issue before us is whether Ms. Kennard's relinquishment of her right to all retirement benefits, under the TRSLA retirement plan, also included that to survivor's benefits. From the outset, we find our decision to be compelled by Johnson v. Wetherspoon, 96-744, p. 8 (La.5/20/97); 694 So.2d 203, 207, wherein the Louisiana Supreme Court found that "[r]etirement and survivor benefits should be treated synonymously when determining the interest in said benefits of a former spouse in the community." We read the word "synonymously" to mean "alike in meaning or significance. [H]aving the same connotations, implications, or reference." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1198 (1984). Thus, under Johnson, the use of the term "retirement benefits" includes "survivors' benefits." Accordingly, from the clear and unambiguous wording of the community property partition, by relinquishing her rights to Mr. Kennard's TRSLA "retirement benefits" without an express reservation, Ms. Kennard unambiguously gave up her rights to the survivor's benefits. Thus, we affirm this portion of the trial court's decision.

CONCLUSION
For the foregoing reasons, the trial court's decision is reversed in part and affirmed in part. Costs on appeal are taxed, equally, against Mr. and Ms. Kennard.
REVERSED IN PART AND AFFIRMED IN PART.