Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,832-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TIMOTHY BUCKNER                                    Plaintiff-Appellant

versus

TIFFANY CHARDAE BERRY                          Defendant-Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-3355

Honorable C. Wendell Manning, Judge

* * * * *

PLEASANT & WILLIAMS                           Counsel for Appellant
THE BARRISTERS' LAW GROUP, LLC
By: Jessica W. Williams

THE B LAW FIRM                                     Counsel for Appellee
By: Breshatta M. Davis

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

This Rule 5 appeal arises out of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, the Honorable C. Wendell Manning, Judge, presiding. By judgment rendered and signed on November 8, 2023, plaintiff, Timothy Buckner, and defendant, Tiffany Chardae Berry, were awarded joint custody of their minor child K.B., with Tiffany being designated primary domiciliary custodial parent effective December 24, 2023, and Timothy to have custodial periods as set forth in the Joint Custody Implementation Plan ("JCIP") attached to the judgment. It is from this judgment that Timothy has appealed. For the reasons set forth below, we reverse and remand.

## FACTS/PROCEDURAL HISTORY

Timothy and Tiffany were never married, but lived together, "on again, off again," until their daughter K.B. (d.o.b. 8/9/14) was about three years old, separating finally due mainly to Tiffany's drinking problem. On October 28, 2019, when K.B. was living primarily with Tiffany, Timothy filed a petition for emergency *ex parte* custody pursuant to La. C.C.P. art. 3945, in which he pled the following: he was afraid that K.B. would suffer irreparable harm because of Tiffany's extreme alcohol abuse; he had witnessed Tiffany drinking while they were together and had urged her to seek counseling, but Tiffany was in denial that she had a problem; in September 2017, Tiffany was hospitalized twice for alcohol abuse; Tiffany's professional license as a pharmacy technician had been suspended when her former employer discovered her alcohol abuse and notified the Louisiana Board of Pharmacy; Tiffany had lost two jobs due to her drinking and was unemployed at the time of the petition for emergency custody; the issue

which prompted the filing of the emergency petition occurred on October 11, 2019, when Tiffany allegedly drove while very intoxicated with K.B. in the vehicle; following this incident, Tiffany was hospitalized in the ICU at a local hospital for several days for alcohol poisoning described as "nearly fatal"; and it was Timothy's belief that Tiffany would continue to drink to excess while K.B. was in her care and would drive while intoxicated with K.B. in her vehicle.

Division F, Civil Section 1 Judge Scott Leehy found that, from the facts alleged in Timothy's petition, immediate and irreparable harm would result to K.B. before Tiffany or her attorney could be heard in opposition, and the trial court granted Timothy *ex parte* temporary custody of K.B. in an order signed October 29, 2019. Tiffany was awarded specific temporary visitation to be supervised by the maternal grandmother in her home. The hearing mandated by La. C.C.P. art. 3945 took place on November 5, 2019. At its conclusion, the trial court rendered an interim order maintaining temporary custody of K.B. with Timothy, and Tiffany was awarded overnight visitation at least once a week under the supervision of her (Tiffany's) mother or grandmother. Further, Tiffany was ordered to undergo evaluation and treatment for alcohol abuse and/or follow through with her scheduled inpatient treatment at Rayville Recovery. Tiffany spent 28 days in the program at Rayville Recovery.

On February 17, 2020, Tiffany filed a petition for change of custody, in which she alleged that she had "recovered from her illness" and had completed the alcohol rehabilitation program. She also alleged that Timothy had expressed an intent to move to another state with K.B., who "will become estranged from her." On April 1, 2020, Tiffany filed a motion [to]

2

stay custody order, claiming that Timothy was planning to move to Metairie, Louisiana, with K.B. and expressing her concern that the New Orleans area was the "epicenter" of the corona virus pandemic in Louisiana.

Two scheduled hearing officer conferences ("HOC") were continued because of COVID-19 closure orders, and a telephone conference was held on April 6, 2020, between the new Division F, Civil Section 1 Judge, C. Wendell Manning, and the parties' attorneys. Timothy's counsel related that Timothy was in training in Metairie for a new job as a firefighter, but K.B. was living in Alexandria, Louisiana, with her paternal grandparents. All parties, including the paternal grandparents, had continued to abide by the interim order setting forth Tiffany's visitation rights. The trial court ordered that the interim order of November 6, 2019, be maintained pending further proceedings, but specified that K.B. was to remain with the paternal grandparents in Rapides Parish except when brought to Ouachita Parish for her supervised visitation with Tiffany; K.B. was not to be taken to the metro New Orleans area (due to COVID-19 concerns). The HOC was scheduled for May 7, 2020, then continued because of new COVID-19 court closure orders.

On April 16, 2020, Timothy filed an answer to Tiffany's petition for change of custody and motion to stay custody order and a reconventional demand for custody and relocation. On April 27, 2020, Timothy filed a motion to compel, motion to deem request for admissions admitted and for attorney fees and costs, therein arguing, in part, that Tiffany had failed to provide requested signed medical authorization release forms and to fully answer other discovery he had propounded primarily dealing with her medical history/records and information about her then-boyfriend (now

3

husband) Jeremy Minor. Timothy asked that the HOC not be held until Tiffany had fully complied with his discovery requests. After hearing the motion to compel on June 2, 2020, the trial court, in a judgment signed on June 15, 2020, granted the relief requested and ordered Tiffany to answer the interrogatories and requests for production. On June 10, 2020, Tiffany filed a rule for contempt; Timothy answered with an opposition and his own rule for contempt on June 30, 2020.[1] At the July 8, 2020, status conference, it was determined that Tiffany had complied with the trial court's orders to respond to Timothy's discovery requests. The reciprocal contempt rules were referred to the HOC, which had been rescheduled for September 22, 2020.[2]

The first HOC was held as scheduled on September 22, 2020. The hearing officer noted that there were some "gaps" in the information she felt

---

[1] A status conference was held on July 8, 2020, for the determination of whether Tiffany had complied with the trial court's orders and to hear both contempt rules. In Tiffany's rule for contempt, she alleged that Timothy had defied the trial court's order by taking K.B. to New Orleans more than once and had consistently interfered with Tiffany's weekly visitation. In his opposition, Timothy acknowledged his understanding that K.B. was not to be taken to the New Orleans metro area because of its designation as a corona virus "hot spot" at the time, and admitted that he had taken K.B. to his new home in Metairie, but only once, to show her what would be her new room. Timothy averred that he had not taken K.B. to any public places or exposed her to anyone she would not have been exposed to in Alexandria. However, he was adamant he had not interfered with Tiffany's visitation. Timothy also asked the trial court to reconsider its orders and allow him visitation with K.B. at his home in Metairie, since by that time COVID-19 had spread state-wide. His rule for contempt was based on allegations that Tiffany had failed to return K.B. timely following visitation more than once and had been with K.B. unsupervised at Tiffany's boyfriend's house.

[2] On July 13, 2020, the trial court received by fax from the office of Tiffany's attorney an unsigned, unfiled pleading entitled "Motion for Interim Custody to Mother with Request for Expedited Hearing." This pleading was not in compliance with requirements of the Louisiana Code of Civil Procedure and was not properly before the trial court; no further action was taken at that time. On July 15, 2020, Tiffany's attorney filed the original of the "Motion for Interim Custody to Mother with Request for Expedited Hearing." This motion likewise failed to comply with La. C.C.P. art. 3945 for an *ex parte* order of temporary child custody. In declining to schedule another telephone conference until Tiffany and her attorney complied with the trial court's procedures, the trial court noted that there had already been several telephone conferences and Zoom hearings with counsel, and all issues pertaining to K.B.'s custody were scheduled for consideration at a HOC on September 22, 2020.

necessary for her to issue a final recommendation, and she requested additional information from the parties' attorneys. Upon receiving and reviewing this supplemental information, the hearing officer found that a custody evaluation was required for determination of the best interest of the child. On October 12, 2020, the trial court, upon the hearing officer's recommendation, issued an order for a custody evaluation appointing the Wellspring Counseling and Family Development Center ("the Wellspring Center") as the expert to conduct the custody evaluation of the parties and K.B. While awaiting the results of the evaluation, the hearing officer issued an interim report which was filed on October 12, 2020, setting forth in detail the evidence that had been presented to her by the parties, primarily Tiffany's medical and rehab records.

The hearing officer made a preliminary assessment of the La. C.C. art. 134 custody factors and the La. R.S. 9:355.14 relocation factors, then recommended an interim award of joint custody of K.B. with Timothy designated as the interim domiciliary parent. The decision of whether to relocate K.B. to the New Orleans area was deferred pending the custody evaluation. K.B. was to continue residing with the paternal grandparents in Rapides Parish and attend school there on an interim basis. The hearing officer's interim award set forth specified visitation periods for Tiffany, which were to be supervised by her mother or grandmother. The hearing officer did not find either party in contempt, but instead admonished them both to obey the custody plan and work together as co-parents.

The custody evaluation report, which was prepared by Donna George, LPC-S, Clinical Director of the Wellspring Center, was submitted to the trial court via the hearing officer on February 10, 2021. A second HOC was held

on February 11, 2021, after which the hearing officer issued her final report and recommendations. The hearing officer reviewed the custody evaluation report prepared by Ms. George, who had made findings regarding each of the custody and relocation factors. The hearing officer agreed with most of Ms. George's findings. Both found that K.B.'s safety was paramount and that an award of joint custody with Timothy as domiciliary parent and an approved relocation to the metro New Orleans area were in K.B.'s best interest.[3]

Both parties filed objections to the hearing officer's report and recommendations, so the recommendations were made the temporary order of the trial court on March 1, 2021. Following a pretrial conference on August 23, 2021, the trial court issued a conference minute entry and order setting the matter for a two-day trial to begin March 9, 2022. Also therein, the trial court provided for certain deadlines by which the parties were to file witness and exhibit lists and respective memoranda in support or opposition. Because the mother's witness and exhibit lists were late, and she did not file a pretrial memorandum, trial was reset to September 13-14, 2022. However, trial was not held until November 2-3, 2022. After 13 witnesses testified, the trial was recessed on the second day for the parties to produce and exchange a number of documents.[4] A Zoom hearing was scheduled for

---

[3] Before reaching that decision, Ms. George had interviews with both parents, Timothy's wife (K.B.'s stepmother), the paternal grandparents, the maternal grandmother and great-grandmother, and K.B.; she conducted visual inspections of all potential homes and reviewed Tiffany's medical and treatment records. Notwithstanding K.B.'s close bond with Tiffany and the child's expressed preference to live with Tiffany in the maternal grandmother's home, Ms. George found that the best interest of K.B. was that primary custody be given to Timothy.

[4] These documents included: K.B.'s schedule for the rest of the school year; K.B.'s grades while in each parent's custody; K.B.'s full enrollment records; documentation of the parents' enrolment and/or completion of co-parenting class;

November 21, 2022, to check the status of the document production. At this hearing, the attorneys informed the trial court that they had their respective client's information, but there had been no exchange. A Zoom conference was held on December 19, 2022, to ensure this exchange had occurred.[5] The trial judge noted that Ms. George's custody evaluation report had been prepared almost two years previously, on February 10, 2021, based on information she had gathered prior to several changes in the parties' circumstances. The trial judge felt that Ms. George's report needed to be updated to reflect the current circumstances. The trial judge told counsel that he would speak to Ms. George and have her coordinate with counsel any additional interviews or in-home visits that might be needed. Additionally, the newly received exhibits would be provided to Ms. George for her review.

There were status conference updates via Zoom, on January 10, 2023, and February 23, 2023. During the February 23, 2023, conference, Tiffany's attorney expressed some concerns she had about how Ms. George's evaluation was conducted and stated her desire to question Ms. George regarding the updated report. The trial court ordered that the trial would reconvene on April 12, 2023, for the purpose of obtaining the testimony of Ms. George regarding her custody evaluation.

Ms. George issued her supplemental report on March 2, 2023, and sent it to the trial court and parties the same date. On April 12, 2023, trial

COVID-19 test results; Timothy's NOFD personnel file, including his application date and pay rate; Tiffany's payroll records; and both parents' work schedules.

[5] These supplemental exhibits were provided to the trial court by the parties' attorneys on December 6 and 7, 2022. Confirmation that counsel had all exhibits from opposing counsel was confirmed at the Zoom hearing.

reconvened for Ms. George's testimony, and both attorneys questioned her. Based on some of this testimony, Timothy's counsel sought to introduce and offer into evidence certified copies of the arrest records of Jeremy Minor, Tiffany's current husband, and to reopen the matter to take testimony from Jeremy regarding the proposed exhibits. Tiffany's counsel objected, and the parties were allowed to brief the matter. At a hearing on May 24, 2023, after considering the arguments of both attorneys, the trial court, noting the applicable standard of best interest of the child, agreed to reopen the case for the limited purpose of taking testimony from Jeremy Minor. After his testimony, the parties were allowed to submit post-trial briefs. A hearing was scheduled for November 8, 2023, at which the trial court issued its ruling.

Noting that it was issuing an initial custody decree, the trial court set forth the applicable standard, best interest of the child, and discussed the applicable factors set forth in both La. C.C. art. 134 and La. R.S. 9:355.14 (although it did not apply or take into account the relocation factors or relocation in its custody determination). The trial court opined that, "As far as the Court is concerned, the parties stood on equal footing at the outset. Nevertheless, the Court believes, as Ms. George does, that all things being equal, it is in the best interest of K.B. at this stage of her growth and development to reside primarily with Mother." The trial court awarded the parties joint custody, with Tiffany designated the primary domiciliary parent effective December 24, 2023, and Timothy to have custodial periods with K.B. as "specified in the [JCIP] attached as Exhibit A to the Judgment and incorporated herein." The trial court also, *inter alia*, provided that "in light of the parties' past difficulties with communication regarding their child,"

they were to enroll in the My Family Wizard app within 30 days of the date of judgment (11-8-23), with the attorneys to be enrolled as well "at this stage to provide monitoring." It is from this judgment that Timothy has appealed.

## DISCUSSION

### *Timothy's Argument*

Timothy's first assignment of error is that the trial court erred in changing primary domiciliary custody from him to Tiffany in the middle of the school year, effectively denying his relocation, without reasonable consideration of the factors and best interest of the child which favored him.

According to Timothy, while the trial court stated in its Reasons for Judgment that the determination was an initial custody decree, the trial court then placed too much weight and consideration on Tiffany's "change in circumstances" without properly and favorably considering the many factors that have always favored him, essentially changing course at the end, without having Tiffany meet the burden of showing that any change would be in K.B.'s best interest.

Timothy points out that, in its Written Reasons, the trial court quoted the custody evaluator's second, supplemental report, wherein she stated, "[i]n my opinion there is nothing Timothy has necessarily done 'wrong' *to lose primary custody* but there has been a substantial change in circumstances with Tiffany that may warrant considering *a change in custody*[.]" Timothy contends that this shows that neither the trial court nor the custody evaluator correctly applied the law—both failed to determine custody pursuant to La. C.C. art. 134's factors for an *initial award of custody*.

9

Timothy asserts that the abrupt and quick change of custody from him to Tiffany during the Christmas break shows that the trial court saw the custody determination as a change of custody "back" to Tiffany on the basis of the maternal preference rule as a result of *her* change in circumstances, and it was not in the best interest of K.B. Four years had passed since Timothy had been granted temporary custody, during which K.B. had not lived in Monroe. It was the middle of K.B.'s school year. There was no evidence that K.B. was deprived of anything, in any harm, and no reason to remove her from Timothy's care before the end of the school year.

According to Timothy, the trial court relied heavily on Tiffany's changes in circumstances, but failed to state any reasons or evidence as to how this affected K.B.'s welfare or best interest. Timothy had K.B. for four years in a stable, thriving environment. Either way, Timothy claims the trial court abused its discretion and/or committed legal error in its application of the La. C.C. art. 134 factors.

In his second and third assignment of errors, Timothy takes issue with the trial court's conclusion that, "at this stage of her growth and development," it would be in the best interest of K.B., to reside primarily with Tiffany. This resulted from the trial court's failure to seriously consider and weigh the article 134 factors, particularly factor no. (8), which is the factor that encompasses Tiffany's history of alcohol abuse, and render judgment based on reasonable evaluations of credibility and inferences of fact.

As noted above, the trial court expressly stated that it found, "all things being equal, it is in the best interest of K.B. at this stage of her growth and development" to reside primarily with her mother. Even if all things

were equal, which Timothy does not concede, the trial court abused its discretion by "breaking the tie" through application of the maternal preference rule.

According to Timothy, the custody evaluator, Ms. George, did not find "all things being equal." She never testified that the La. C.C. art. 134 factors equally favored the parties, but even if they did favor the parties equally, neither the trial court nor the custody evaluator can base a custody judgment on the maternal preference rule. Ms. George was asked this hypothetical *by the trial judge*: "All things being equal, …, with your expertise, is it better for an eight-and-a half-year-old girl to be with a mother or a father? All things being equal? Based upon her development level and the needs of a young lady?" Her response was, "Yeah. I would say mother." Timothy takes the position that this generalized, subjective statement was simply Ms. George's own personal feeling, unsupported by the facts of this case, research from the medical community or jurisprudence.

Furthermore, urges Timothy, all factors (things) are not equal when the evidence is actually considered. The trial court failed to mention (maybe even consider) that the majority of the factors favored Timothy's relocation and custody requests. These include, but are not limited to:

- The potential for K.B. to be abused is still present, considering past neglect and Tiffany's current denial of her condition.

- The capacity and disposition of each parent to give K.B. love, affection, and spiritual guidance and to continue her education and rearing; the home, school, and community history of K.B.; and, the responsibility for the care and rearing of K.B. previously exercised.

- The time that K.B. may have lived with Tiffany was neither a stable nor an adequate environment.

- The permanence, as a family unit, of the existing or proposed custodial home or homes.

- The moral fitness of the parties.

11

- Tiffany's mental health, her history of substance abuse, and her husband's *actual* criminal history does not outweigh Timothy's and Megan's complete absence of substance abuse and lack of a criminal history.
- The evidence supports that Timothy and his family have attempted to foster a relationship and made attempts at co-parenting for the benefit of K.B.

Timothy next asserts that the trial court failed to implement a fair visitation schedule to allow him adequate visitations with K.B. The trial court, in the JCIP, mirrored Tiffany's visitation schedule by giving Timothy only one weekend a month in his hometown of Slidell, Louisiana. According to Timothy, the trial court failed to consider the possible reasons as to why Tiffany was awarded only one of her visits in Monroe rather than both. She was initially awarded only one supervised day a week in the initial temporary order. At that time, Tiffany did not have any other children, and it was only her and a supervisor (her mother) who had to travel to Slidell. Tiffany's schedule increased gradually, and she was eventually granted two weekends a month in Monroe, Louisiana; for custody exchange, the parties met halfway each time.

Timothy has two other small children. If not awarded primary domiciliary custody, Timothy, his wife, and two small children (ages two and three now) will pack up, drive four hours, and pay to stay the weekend in Monroe in a hotel. It is unfair to subject Timothy and K.B.'s siblings to implement this visitation plan when his circumstances were and are much different than those of Tiffany.

Timothy's fifth assignment of error is that the trial court erred in denying him the chance to submit supplemental evidence. After the trial's conclusion, the case was "in recess" to allow additional evidence and

testimony. With the submission of additional evidence and testimony that was "continuous," matters were still being tried before the trial court. The record contains status conferences and hearings reflecting instances in which the trial court solicited and accepted evidence and testimony from Tiffany and Timothy, the custody evaluator, and Jeremy Minor, Tiffany's husband.

In his final assignment of error, Timothy complains that the trial court abused its discretion when it ordered a status conference and appointed counsel as facilitators of the parties' communications after judgment was rendered and notice of appeal had been filed. Timothy contends that the trial court is divested of its authority to act on a decided issue without a new pleading before it. There was no formal pleading before the trial court to invoke its authority. Furthermore, the court burdened the parties' attorneys with monitoring the communications between them for an indefinite period without compensation. Timothy's devolutive appeal was granted on December 1, 2023. Timothy contends the order for the communications via My Family Wizard app, as well as the scheduling of a status conference without a formal pleading, both of which occurred after December 1, 2023, were both erroneous.

### Tiffany's Argument

Tiffany first urges that the trial court did not err in awarding primary domiciliary custody status to her or in using its discretion to rely on the court-appointed custody evaluator who opined that K.B. should be reunited with her mother. Next, contrary to what Timothy has assigned as error, the trial court did give serious consideration to the La. C.C. art. 134 factors. The trial court provided "great detail" in its Judgment and Written Reasons as to

how the factors were reviewed and applied, urges Tiffany. There was no abuse of the trial court's vast discretion in this case.

Likewise, there is no merit to Timothy's allegation that the trial court erred in finding sufficient evidence of Tiffany's recovery efforts. According to Tiffany, she showed that she was capable of providing the environment that met the best interest of K.B. through establishing material changes she made and continues to make throughout the proceedings. The trial judge had sufficient information from which to evaluate both parties and both environments in which K.B. would be living.

In his fourth assignment of error, Timothy has argued that the trial court erred in denying the introduction and review of supplemental information. Tiffany points out that the trial court in fact allowed Timothy's attorney to introduce new evidence of Tiffany's husband's previous criminal history and to cross-examine him on this evidence, as well as to question the custody evaluator when she was called as a witness. According to Tiffany, the trial court allowed Timothy on multiple occasions to introduce enough information as to why she should not be the primary domiciliary custodial parent of K.B. It is Tiffany's position that she had proven that her problem with alcohol has had no bearing on this case for the past four years.

Tiffany next contends that the trial court properly exercised its discretion, as it retained jurisdiction to require the parties to enroll in the My Family Wizard app so it could review the situations of the parties following the final judgment of custody.

Regarding the visitation awarded to Timothy by the trial court, Tiffany urges that this schedule was established as being in the best interest of K.B., and the parties are always allowed to communicate and set up

14

visitation outside of the set schedule. Additionally, Timothy can attend "any and all of K.B.'s school functions and extracurriculars."

### *Applicable Legal Principles*

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Kinnett v. Kinnett*, 20-01134 (10/10/21), 332 So. 3d 1149; *Evans v. Lungrin*, 97-0541 (La. 02/6/98), 708 So. 2d 731; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Dunn v. Dunn*, 53,655 (La. App. 2 Cir. 1/13/21), 309 So. 3d 969. In order to reverse a trial court's determination, an appellate court must review the record in its entirety and determine that (1) a reasonable factual basis does not exist for the finding, and (2) the record establishes that the trial court is clearly wrong or manifestly erroneous. *Lowery v. St. Francis Medical Center*, 54,513 (La. App. 2 Cir. 5/25/22), 339 So. 3d 770; *Dunn, supra*; *Toston v. St. Francis Med. Ctr., Inc.*, 49,963 (La. App. 2 Cir. 10/14/15), 178 So. 3d 1084; *Moss v. Goodger*, 12-783 (La. App. 3 Cir. 12/12/12), 104 So. 3d 807. If the trial court's findings of fact are reasonable, appellate courts should not reverse them. *Id*. However, appellate courts are also prohibited from simply rubberstamping a trial court's findings of fact. *Id*. Instead, we are constitutionally mandated to review all the facts contained in the record and determine whether the trial court's findings are reasonable considering the entire record. *Id*.

Where one or more trial court legal errors interdict the fact-finding process, the manifest error/abuse of discretion standard is no longer applicable; and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine the sufficiency of the evidence. *Evans, supra*, 97-0541, pp. 6-7,

15

708 So. 2d at 735. When a trial court applies incorrect legal principles, and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs. *Id.*, 97-0541, p. 7, 708 So. 2d at 735. Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record. *Id*; *Singleton v. Singleton*, 51,476 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1134.

The primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131; *Cook v. Sullivan*, 20-01471 (La. 9/30/21), 330 So. 3d 152; *Evans*, *supra*; *Langston v. Langston*, 54,611 (La. App. 2 Cir. 5/25/22), 340 So. 3d 1272. Every child custody case must be viewed on its own particular set of facts and relationships involved, *Cook*, *supra*, with the paramount goal of reaching a decision which is in the best interest of the child. *Fuller*, *supra*.

La. C.C. art. 134(A) provides a **nonexclusive** list of pertinent best interest factors as follows:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

Formerly, courts employed a "maternal preference rule," but this presumption, whether based on real life experience or fictitious stereotype, has clearly been abrogated. John A. Lovett, *Love, Loyalty and the Civil Code: Rules, Standards and Hybrid Discretion in a Mixed Jurisdiction*, 72 La. L. Rev. 923, 964, fn. 169 (2012), *citing Hill v. Hill*, 34,104 (La. App. 2 Cir. 1/24/01), 777 So. 2d 1263; and *Dubois v. Dubois*, 532 So. 2d 360 (La. App. 3 Cir. 1988). No presumption or preference, from real life or fictitious stereotype, flows from the sex of the parent. *Hill*, *supra*; *Dubois*, *supra*. A father is just as important to the well-being of a child as is a mother, regardless of the child's age. *Becnel v. Becnel*, 98-593 (La. App. 5 Cir. 3/25/99), 732 So. 2d 589, *writ denied*, 99-1165 (La. 6/4/99), 747 So. 2d 630;

*Dearmon v. Dearmon*, 96-222 (La. App. 3 Cir. 11/13/96), 682 So. 2d 1006. The trial court must determine which of the two parents, without regard for the gender of the parent, and without any regard for the "needs" of the parents, can serve better the best interest of the child. *Turner v. Turner*, 455 So. 2d 1374 (La. 1984).

### Analysis

As noted above, the parties in this case never married, but lived together and raised K.B. until she was about three years old. Thereafter, with K.B. living primarily with Tiffany, they co-parented for about the next three years with no formal custody arrangement until the fall of 2019, when Timothy filed for and got *ex parte* emergency custody because of Tiffany's alcohol abuse and dependency. Specifically, it took Tiffany's emergency hospitalization and temporary blindness caused by methanol poisoning at a high school reunion for Timothy to finally act upon what he (and her mother and grandmother) had known for several years—that Tiffany had an alcohol problem that required professional help. Complicated and drawn out by COVID-19, this custody matter took far too long to get to trial.

Tiffany's motion to change custody was filed only two and one-half to three months after she got out of rehab. However, this is not a change of custody case, but instead is an initial custody setting, as there had been no prior consent or considered decree of custody rendered, and, following the initial *ex parte* order, there was only a series of interim orders. Therefore, the trial court's sole analysis should have been best interest of the child according to the factors set forth in La. C.C. art. 134. Had the trial been held ***as scheduled***, on March 9, 2022, instead of having to be reset due to Tiffany's attorney's noncompliance with the filing deadlines set by the trial

18

court, Ms. George's custody evaluation report would not have been 21 months old but would have been prepared just one year prior to the custody trial, negating the necessity for a second one.

In its Written Reasons, the trial court noted it would not be discussing specifically the 14 factors set forth in La. C.C. art. 134. In its analysis of the positives and negatives it considered regarding each of the parents, the trial court observed the following:

> This Court is particularly impressed with the remarkable job Mother has done addressing her alcohol abuse and sobriety. Mother attends Alcoholics Anonymous meetings, has a sponsor, and claims to have remained sober since October 2019, and Ms. George and the Court have been presented with no evidence to suggest otherwise. Mother has also maintained her employment, a fact Ms. George noted was questionable *at the time of her initial custody evaluation*. Mother has now married Mr. Minor [*since the initial custody evaluation*], who was her boyfriend at the time of the first evaluation. Mr. Minor is gainfully employed and is no longer involved in the music industry [*as he was at the time of the initial custody evaluation*]. The evidence shows that Mr. Minor's criminal history occurred approximately ten years ago and primarily involved relatively minor drug offenses.[6] While the Court does not disregard that history, there is no evidence of current substance abuse by Mr. Minor, nor does the criminal history of relatively minor offenses from approximately ten years ago constitute a threat to K.B. Given the totality of the circumstances, the Court finds this factor is outweighed by others.

> The Court commends Father for stepping up in a time of crisis to ensure that K.B. had a safe, stable home. Nevertheless, the Court points out that Father, too, relied and still relies upon others to assist him in parenting K.B. During the period when he was transitioning to his new job in New Orleans, he

---

[6] Timothy introduced evidence (and Jeremy testified at the custody hearing regarding this evidence) that contradicted Jeremy Minor's statement to Ms. George regarding his criminal history. Specifically, on January 20, 2019, while mixing music at his recording studio, Mr. Minor was arrested for possession of a firearm while in possession of controlled dangerous substances, and two counts of possession of controlled dangerous substances, codeine, and marijuana. As part of a plea agreement, these charges were dismissed as part of an extension of the "diversion" he was on for a 2015 conviction for bank fraud.

19

depended upon his parents to care for K.B. in Alexandria,[7] and even now he relies upon his wife Megan to do much of the day-to-day parenting.

The Court then notes the following from Ms. George's supplemental report:

> In my opinion, there is nothing Timothy has necessarily done "wrong" to lose primary custody but there has been ***a substantial change in circumstances*** with Tiffany that may warrant considering a change in custody. I have the opinion that both homes can provide stability for [K.B.] and she would be safe in the care of either of her parents. Obviously and unfortunately because of the distance between the two homes they cannot split custody 50/50, so one parent must be named as the primary residence for [K.B.]. It does appear that Timothy and Tiffany need to improve on their co-parenting efforts to ensure that [K.B.] can enjoy all she deserves from all of her family members. I would support the court's decision either way and feel good about [K.B.] being cared for.

The trial court, citing those portions of the supplemental report wherein K.B. expressed a preference to move back to her home in Monroe with her mother, "specifically questioned Ms. George as to whether a young girl of K.B.'s age should be with her mother. Ms. George testified that, all things being equal, she believes it is preferable for a young girl of this age to be with her mother."

Thereafter, although specifically dismissing Timothy's concerns about its application of the maternal preference rule, the trial court went on to base its award of custody to Tiffany upon her gender. In the Court's own words, "[T]he Court believes, as Ms. George does, that all things being equal, it is in the best interest of K.B., at this stage of her growth and development, to reside primarily with Mother."

---

[7] The record shows that Timothy did not choose to leave K.B. with his parents in Alexandria. This arrangement was court-ordered due to the COVID-19 pandemic.

The first issue with the trial court's ruling is that there was an intermingling of the standard for an initial setting for custody (best interest of the child) with that for a modification of custody (a material change in circumstances after the original custody award and the modification is in the best interest of the child). As noted above, and as the trial court stated in the beginning of its Written Reasons, this is an *initial setting* of custody. Thus, the father and mother stood on equal footing at the outset, and the role of the court was to determine the best interest of the child *based on the relative fitness and ability of the competing parents in all respects to care for the child*. *Simmons v. Simmons*, 26,414 (La. App. 2 Cir. 1/25/95), 649 So. 2d 799; *Dubois*, *supra*; *Wallace v. Wallace*, 420 So. 2d 1326 (La. App. 3 Cir. 1982).

What concerns this Court the most is that Timothy was not awarded custody because he is K.B.'s father rather than her mother. As Timothy has argued in his appeal, the maternal preference rule has long been abrogated in this state. This legal error mandates that this Court review the record *de novo*. However, regardless of the applicable standard of review, manifest error or *de novo*, this Court finds that the trial court erred in awarding domiciliary custody to Tiffany rather than Timothy.

The record in its entirety, including the testimony, initial evaluation conducted by Ms. George wherein she set forth specifically the La. C.C. art. 134 factors and their applicability to this case, and the supplemental evaluation, clearly shows that the best interest of the child is for Timothy to have domiciliary custody.

Timothy has *consistently* stepped up, placing K.B.'s well-being as a top priority, and has made opportunities for his daughter as his career as a

21

firefighter advanced, even during his relocation to New Orleans. Timothy is remarried, has additional children, and together, he and his wife Megan moved their family to nearby Slidell because they could get a bigger house with a bedroom for each child and a yard. In her supplemental report, Ms. George specifically noted, "Timothy and his wife *have continued* to be successful in their careers and have added to their family. They seem to be doing well in their marriage and *have provided structure and consistency in their lives and for their children*."

From our reading of the record, it is obvious that K.B. loves both of her parents, stepparents, siblings, and extended family on both sides. As for K.B.'s preference, we note that she did not testify (which is appropriate, given her young age and the circumstances which put this custody matter before the trial court in the first place). However, K.B. did talk to Ms. George, the counselor who prepared both evaluation reports.

As Ms. George noted in *both of her evaluations*, K.B. has thrived while living with Timothy and Megan Buckner. The counselor, in her supplemental evaluation, noted the following:

- [K.B.] spoke up when I asked her questions and was very polite. She said school is boring but she does like playing with her friends there. She said she likes living with her dad and is happy but does not like living in Slidell. She gets tired of being around her sisters. She enjoys family activities, and she likes visiting Megan's (stepmother's) family.

- She wants to live with her mother in Monroe so she can play with all [of] her new Christmas toys. She said she only has baby toys at her dad's house. She likes Jeremy, her new stepfather, and said he is nice to her and teaches her multiplication. She misses her mom. She said her mom talks about her coming back to live with her and asks her questions about how she is being treated at her dad's house. [K.B.] said that she wants to be around her mom's new baby and the rest of her family that she misses.

- In summary, as far as [K.B.] is concerned, it appears she adjusted fairly well to the move to her father's home and primary care. She has done well in school, made friends, and joined activities which does show she has continued to thrive in her new environment. [K.B.] expressed that she misses her family members that she grew up with, and she would like to move to her mother's house. She also expressed that she is happy where she is. *So, she just wants to be with both parents as much as possible*.

Many of the changes in circumstances realized by Tiffany appear to have occurred since the first evaluation by Ms. George. Furthermore, the fact that the trial court placed such an emphasis on Tiffany's changes in circumstances in its custody determination and award did not put the two parents on equal footing. In fact, many best-interest-of-the-child factors favoring Timothy were discounted or dismissed *in toto* by the trial judge.

This Court does not denigrate Tiffany's recovery or sobriety efforts. In fact, it commends her for her strides and accomplishments thus far. However, a party's *history* of substance abuse, violence, or criminal activity is a factor that must be considered by a court in any best-interest-of-the-child determination. This factor weighs heavily in favor of Timothy and his wife.

This Court notes that the record shows that Timothy and Tiffany have different personalities and communication styles. As noted by Ms. George in her supplemental report, Tiffany needs to make a better effort to respond to and communicate with Timothy regarding K.B. As a firefighter, Timothy is required to plan further in advance than Tiffany may prefer, but both parents will have to put aside their differences and preferences in this area and make a joint effort to communicate effectively for K.B.'s sake.

The record shows that Timothy has been willing in the past to be flexible with the visitation schedule and let Tiffany have K.B. for her birthdays and all major holidays, as his religious beliefs do not include the

23

celebration of such events. There is also testimony, however, that some of Tiffany's requests have not been entertained by Timothy. Going forward, this Court urges both parents to consider that it only hurts K.B. when there is a breakdown in their communications and cooperative parenting efforts. Failure to initiate an invitation or communication, respond to a text, or consider switching a scheduled custodial period, when the request is reasonable,[8] on the part of either party, is one more chance each parent had to (but chose not to) do the right thing for their child.

### *Remand for New JCIP*

To the extent it is feasible and in the best interest of the child, physical custody of the child should be shared equally. La. R.S. 9:335(A)(2)(b). Nonetheless, a finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. The implementation order should allocate the time periods during which each parent shall have physical custody of the children so that the children are assured of "frequent and continuing contact" with both parents. La. R.S. 9:335(A)(2)(a). As we are reversing the trial court's domiciliary parent designation, we are necessarily setting aside its custody allocations set forth in the JCIP.

---

[8] As noted by the Court in *Joubert v. Joubert*, 19-349, p. 11 (La. App. 3 Cir. 11/13/19), 285 So. 3d 7, 15-16:

> The parents are encouraged to be flexible … and to allow the non-domiciliary parent visitation with the [child] above that which is stipulated when that additional visitation is reasonable, does not interfere with the [child]'s routine home, school and extracurricular activities, when that visitation facilitates open and natural access between the [child] and the non-domiciliary parent and therefore is in the best interest of the [child]; however, *in the event the parties are unable to agree on reasonable, informal visitation, then the terms of the foregoing schedule shall be complied with*. (emphasis added).

*My Family Wizard App*

We note that the following is excerpted from the trial court's

November 8, 2023, judgment regarding use of the My Family Wizard App:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Mother and Father shall use the My Family Wizard app for all their future communication concerning K.B. The parties are ordered to enroll in the My Family Wizard app within 30 days of today's date, and their attorneys are to be enrolled as well at this stage to provide monitoring. Counsel are further ordered to confirm to the Court in writing that enrollment has occurred.

According to Timothy, the trial court ordered a status conference and

appointed counsel, without pay, as facilitators of the parties'

communications on the My Family Wizard App *after the judgment was*

*rendered and the notice of appeal had been filed*. The trial court's order for

the parties' attorneys to enroll in the My Family Wizard app was in the

*judgment*. Any issues or problems with this app's continued use should be

taken up with the trial court upon remand.

We do point out, however, that review hearings cannot be held in civil

custody cases to determine compliance with a custody decree. *Brown v.*

*Mock*, 43,571 (La. App. 2 Cir. 7/16/08), 987 So. 2d 892; *Council v.*

*Livingston*, 20-0208 (La. App. 4 Cir. 7/15/20), 305 So. 3d 559; *R.J. v. M.J.*,

03-2676 (La. App. 1 Cir. 5/14/04), 880 So. 2d 20. Additionally, once a trial

court's jurisdiction is divested, any judgment signed by the trial court is void

for lack of jurisdiction. *Grant v. Federal Land Bank*, 586 So. 2d 685 (La.

App. 2 Cir. 1991).

## CONCLUSION

For the reasons set forth above, we reverse the trial court's judgment,

and remand for further proceedings consistent with this Opinion. Costs of

this appeal are assessed against defendant, Tiffany Chardae Berry.

**REVERSED and REMANDED.**